Frank J. KELLEY, Attorney General of the State of Michigan, and the State of Michigan, Plaintiffs and Counter Defendants,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD CO., Counter Plaintiff and Cross-Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas, Cross-Defendants.

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD, Counter Defendant and Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the Richard E. Thomas Living Trust, the Richard E. Thomas Living Trust, and Letha Thomas, Third Party Defendants.

UNITED STATES of America, Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD
COMPANY, Cross–Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thom-
as Development, Inc.; Thomas Solvent
Company of Detroit, Inc.; Thomas Sol-
vent Company of Muskegon, Inc.;
Thomas Solvent, Inc. of Indiana; TSC
Transportation, Inc.; and Richard E.
Thomas; Cross–Defendants.

THOMAS SOLVENT COMPANY and
Richard Thomas, Counter
Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD
COMPANY, Counter Defendant and
Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the
Richard E. Thomas Living Trust; the
Richard E. Thomas Living Trust; and
Letha Thomas, Third Party Defendants.

Nos. K86–164, K86–167.

United States District Court,
W.D. Michigan.

Sept. 21, 1990.

Frank J. Kelley, Atty. Gen. by Robert P. Reichel, Asst. Atty. Gen., Environmental Protection Div., Lansing, Mich., for plaintiffs and counter defendants.

Foster, Swift, Collins & Coey, P.C. by Charles E. Barbieri, John L. Collins, Lansing, Mich., for Thomas Solvent Co. and Richard E. Thomas.

Sullivan, Hamilton & Schulz by James M. Sullivan, Battle Creek, Mich., for Thomas Solvent Co. of Detroit, Inc., Thomas Solvent, Inc. of Indiana, TSC Transp. Inc., Thomas Solvent Co. of Muskegon, Inc. and Thomas Development, Inc.

Bodman, Longley & Dahling by Frederick J. Dindoffer, R. Craig Hupp and Mary P. Sclawy, Detroit, Mich., for Grand Trunk Western R. Co.

John S. Smietanka, U.S. Atty. by Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., Joel M. Gross and Steven J. Willey, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Roger Grimes and Jesse A. Goldfarb, Asst. Regional Counsel, U.S. E.P.A., Chicago, Ill., of counsel), for the U.S.

Bremer, Wade, Nelson & Alt by Michael D. Wade, Grand Rapids, Mich., for Great American Surplus Lines Ins. Co.

Farr & Oosterhouse by Kenneth R. Oosterhouse, Grand Rapids, Mich., amicus curiae, for General Foods Corp., Essex Group, Inc., BASF Corp., Tyler Refrigeration Corp., G.F. Corp., Clark Equipment Co., Reichold Chemical, Inc., Miles Laboratory, Inc., Hoover Universal, Inc., Starcraft Corp., Lear Siegler, Inc., Twin Y Corp. and Acme Printing Ink Co.

· Patton, Boggs & Blow by J. Gordon Arbuckle, John C. Martin and David J. Farber, Washington, D.C., amicus curiae, for General Foods Corp., Essex Group, Inc. and BASF Corp.

## OPINION

ENSLEN, District Judge.

This case comes before the Court on two cross motions for summary judgment. On January 25, 1988, defendants, Thomas Solvent Company and Richard Thomas, filed a motion for summary judgment on their counterclaim against Grand Trunk Western Railroad. Defendant, Grand Trunk Western Railroad, filed a motion two days later on January 27, 1988 for partial summary judgment on counts I & II of its cross claim against Thomas Solvent Company, Thomas Development Company, and Richard E. Thomas. Both motions seek reimbursement by way of contribution and/or response costs liability pursuant to the Comprehensive Environmental Response, Compensation & Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*

## BACKGROUND

In the main action, which has been consolidated for pretrial and trial proceedings, plaintiffs, the United States and the State of Michigan, seek recovery under CERCLA of costs expended to clean up hazardous substances at the Verona Well Field and surrounding areas. The substances had allegedly been released by defendants on three nearby properties and had penetrated the soil, entered the groundwater and contaminated a substantial number of wells at the Verona Well Field. The Verona Well Field serves as a public water supply for approximately 35,000 residents and businesses of the City of Battle Creek, Michigan. The three properties on which hazardous wastes had been spilled or discarded are: the Raymond Road facility, the Annex, and the Grand Trunk marshalling yard.

The complaint alleges that in August 1981, the Michigan Department of Public Health identified 10 of 31 wells at the Verona Well Field that had been contaminated with various organic solvents. Since 1981, the United States Environmental Protection Agency (EPA) has undertaken, and continues to undertake, various response actions at and around the Verona Well Field to prevent the further migration of the contamination, and to protect the public health, welfare, and environment. At this time, EPA's costs well exceed 4.5 million dollars.

Plaintiffs seek to hold Thomas Solvent Company (Thomas Solvent), Thomas Development Company (Thomas Development), and Richard Thomas liable for cleaning up the Raymond Road site. Plaintiffs seek to hold Grand Trunk Western Railroad (Grand Trunk), Thomas Solvent, and Richard Thomas jointly and severally liable for the cleanup of the Annex. Because plaintiffs allege that the downstream harm to the Verona Well Field is indivisible and incapable of apportionment among the three alleged sources, they seek to hold Grand Trunk, Thomas Solvent, Thomas Development, and Richard Thomas jointly and severally liable for the Verona Well Field clean up. Plaintiffs seek response costs incurred to date and a declaratory judgment that defendants are liable for costs in the future. I found Thomas Solvent and Thomas Development jointly and severally liable for plaintiffs' response costs on December 13, 1989. In June 1989, I approved a partial consent decree and judgment between plaintiffs and defendant Grand Trunk which established Grand Trunk's liability for the contamination at the three sites.

## STANDARD

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas*

*Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *genuine issue for trial.*' " *Historic Preservation*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and heartily supported, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## FACTS

Prior to bankruptcy in 1984, Thomas Solvent was in business as a distributor of chemical products, which included the purchase, sale, and storage of solvents at two locations: one on North Raymond Road in Battle Creek, Michigan; and the other, at the Annex, a short distance away on Emmett Street. Thomas Development owned the property on Raymond Road and from the date of its acquisition leased it to Thomas Solvent. At all times pertinent to this litigation, Richard Thomas was the owner of Thomas Solvent. The Annex was at all times owned by Grand Trunk and leased to Thomas Solvent. The Raymond Road Facility and the Annex are in close proximity and form a single plume of contamination, called the Southern Plume. The third property is Grand Trunk's Marshalling Yard, which forms the Eastern Plume. It is not possible to quantify precisely the source of each contaminant found at the Verona Well Field.

The Raymond Road Facility was Thomas Solvent's primary facility in the Battle Creek area. The Annex was used by Thomas Solvent for offloading railroad tank car shipments of solvent and for the storing and/or truck-loading of these solvents. The Grand Trunk Marshalling Yard was used for the cleaning and maintenance of rail equipment.

## DISCUSSION

*Liability under CERCLA for Response Costs*

Thomas Solvent and Richard Thomas seek reimbursement from Grand Trunk for their response costs that were necessitated by the contamination found at the Verona Well Field. They argue that Grand Trunk's spilling and dumping of hazardous wastes at the Marshalling Yard and at the Annex resulted in those response costs. Grand Trunk argues, on the other hand, that Thomas Solvent, Richard Thomas, and

Thomas Development are liable for its response costs expended to remedy and mitigate damages at the Annex (including the surrounding areas) and the Verona Well Field.

■ Liability for response costs under CERCLA is strict liability, *J.V. Peters & Co. v. EPA*, 767 F.2d 263, 266 (6th Cir. 1985), subject only to the limited third party defense provided in section 9607(b). Equitable defenses, such as unclean hands, laches, and estoppel, have been repeatedly rejected by courts hearing CERCLA claims. *See* Opinion, 727 F.Supp. 1532, 1539.

In order to establish liability under CERCLA, the movant must prove four elements under section 9607:[1] 1) defendants are, or were at the time of disposal, owners or operators 2) of a facility 3) at which there was a release or threatened release of a hazardous substance and 4) which caused another person to incur response costs.

a. *Owners or Operators*

Under section 9607(a)(2), any person who owned or operated a facility at the time hazardous wastes were disposed is liable for response costs incurred at the facility. *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043–44 (2d Cir.1985). The term "person" includes among others an individual, firm, corporation, or commercial entity. 42 U.S.C. § 9601(21). An owner or operator includes one who currently owns or operates a facility, or if title was transferred to the current owner in bankruptcy, one who "owned, operated, or otherwise controlled activities" at the facility immediately prior to transfer. *Id.* § 9601(20).

It is undisputed that at the time of the releases, Grand Trunk was the owner of the Annex and the owner/operator of the

Marshalling Yard. Thomas Solvent leased the Annex property from Grand Trunk and operated a chemical storage and transport facility there. Thomas Development was the owner of the Raymond Road facility prior to 1984 when many releases of hazardous substances occurred. Richard Thomas may also be an "owner or operator" under section 9601(20), but he has not been so found as a matter of law by this Court. *See* Opinion, Dec. 13, 1989 (published at *United States of America v. Thomas Solvent Co.*, 727 F.Supp. 1532 (1989)).

b. *Facility*

The movants must show that the sites at issue are each a "facility" under section 9607(a). This Court has found that the Raymond Road, Annex, and Marshalling Yard sites are facilities within the meaning of CERCLA because each satisfies both parts A and B of the definition. Opinion, 727 F.Supp. at 1545. They consist of buildings, structures, and equipment; plus, hazardous substances have been located there.

c. *Release of Hazardous Substances*

■ Proof of liability under CERCLA must also include evidence of a release or threatened release of hazardous substances at a site. CERCLA defines "release" to include any of the following: "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22). The term "environment" refers to "surface water, groundwater, drinking water supply, land surface or subsurface strata, or ambient air." 42 U.S.C. § 9601(8).

This Court has found that releases of hazardous substances occurred at the Raymond Road Facility and at the Annex. Opinion, Dec. 13, 1989, at 20–30. Whether

1. 42 U.S.C. 9607 (1988), which provides in relevant part that "the owner and operator of a ... facility [or] any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... shall be liable for all costs of removal or remedial action incurred by the United States or a state ... [and] any other necessary costs of response incurred by any other person consistent with the national contingency plan."

such releases occurred at the Marshalling Yard is, however, still at issue. The partial consent decree, between plaintiffs and Grand Trunk Railroad, does not necessarily establish as a matter of law, for the purposes of these motions, that a release of hazardous substances occurred at the property which is the subject of the consent agreement. The counter-plaintiffs must prove that such releases occurred.

Thomas Solvent and Richard Thomas specifically refer to depositions by prior employees who testified to repeated spilling and pouring of toxic chemicals at the Marshalling Yard. Second Supplemental Brief, at 4 (citing Freeman deposition, at 14–16 & 40; Drake deposition, at 28, 30–31). In addition, Grand Trunk's own expert has conceded that contamination at the Marshalling Yard migrated to the Verona Well Field and overlapped with other contaminants there. *Id.* (citing Swanson deposition, at 210–11). That testimony is consistent with the findings of counter-plaintiff's own experts who concluded that separating the impacts from the various sources would likely be impossible. Ritchey Affidavit; Minning deposition at 68–70.

Grand Trunk's activities contributing to contamination at the Annex is less documented, but such evidence does exist. Grand Trunk sometimes removed train cars from the Annex in an unsealed condition, allowing residual chemicals to escape. Charkowski Affidavit, para. 5. There is also testimony with supporting documentation that Grand Trunk moved at least one leaking rail car from the Yard to the Annex site or to the vicinity of the nearby Reith–Riley Easement. Schlosser deposition at 71. Moreover, certain wastes generated by Grand Trunk were stored at the Annex. Charkowski deposition at 144. Accordingly, I find that Grand Trunk, as the owner of the Annex and the Marshalling Yard, is liable for some part of the hazardous waste found there.

Pursuant to section 9607(a) of CERCLA, other persons are liable for those costs incurred in responding to a release or threat of release of a "hazardous substance." A "hazardous substance" is defined in section 9601(14) and includes numerous substances listed under several other federal environmental protection statutes. *See* Opinion, Dec. 13, 1989, at 29. It is now undisputed that hazardous substances have been released and found at the Verona Well Field, the Annex, the Raymond Road Facility, and at the Marshalling Yard.

d. *Response Costs*

 The final element necessary to find liability under section 9607(a) of CERCLA is that the release or threatened release of hazardous substances caused another person to incur response costs. Under section 9605(25), "response" includes "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). The terms "remove" and "removal" are described as "the cleanup or removal of released hazardous substances from the environment," and include actions necessary "to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment." *Id.* § 9601(23).

Determining the amount of response costs expended is unnecessary to a finding of liability under section 9607(a). *See* 42 U.S.C. § 9607(a); *United States v. Northernaire Plating Co.*, 670 F.Supp. 742, 746 (W.D.Mich.1987). What is at issue in this inquiry is the fact that a person incurred response costs, not the amount of costs recoverable. I can grant summary judgment as to liability without ruling on the exact amount of recoverable costs. Parties, at a later time, may challenge certain response costs as being inconsistent with the National Contingency Plan. Section 9613(g)(2) expressly provides that "the court shall enter a declaratory judgment on liability for response costs or damages that

will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

There is no dispute that Grand Trunk incurred response costs. Thomas Solvent and Richard Thomas provide evidence of expenditures made for monitoring, investigation, and assessment of contamination evolving out of the Verona Well Field pollution. I find that Thomas Solvent and Richard Thomas have incurred response costs.

One major issue remains, however. The movants, Grand Trunk, Thomas Solvent, and Richard Thomas, are all responsible parties themselves. Section 9607 applies to response costs incurred by "any other person." 42 U.S.C. § 9607(a)(1)(B). This language seems to imply that only those other than owners/operators at the time of the hazardous contamination have standing to assert a claim for response costs under this section. The purpose behind this provision is to give persons a private cause of action against owners/operators for compensation. *See* 1980 *U.S.Code Cong. & Admin.News* 6119, 6193; *Walls v. Waste Resource Corp.*, 761 F.2d 311, 317–18 (6th Cir.1985). It encourages subsequent owners and occupiers to take prompt response actions when hazardous contamination is discovered and thus, minimizes harm. *See Walls*, 761 F.2d at 318.

A few courts have addressed whether potentially responsible or responsible parties should have a cause of action for reimbursement under section 9607(a)(1)(B). They have found such a right of action. *Chemical Waste Mgt. v. Armstrong World Indus.'s*, 669 F.Supp. 1285, 1291 (E.D.Pa. 1987); *Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913 (N.D.Okla.1987). Finding that potentially responsible and responsible parties have standing to seek reimbursement for their response costs under section 9607(a) supports the underlying policy of encouraging prompt and complete response actions to this extremely dangerous contamination. I thus find that section 9607(a) gives responsible or potentially re-

sponsible parties a right of action against owners/operators for response costs.

### e. *Apportionment*

 As I have discussed previously, *see* Opinion, Dec. 13, 1989, any liability under section 9607 is joint and several except where the harm is shown to be divisible. *O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir.1989). CERCLA has incorporated the common-law principle that where two or more defendants are responsible for an indivisible harm, each is subject to liability for the whole harm. *See, e.g., United States v. South Carolina Recycling & Disposal, Inc.*, 858 F.2d 160 (4th Cir.1988). The burden for demonstrating that the harm suffered by each movant is in fact divisible and that, therefore, joint and several liability does not apply, rests with each of the owners/operators. Only "if the harm is divisible and if there is a reasonable basis for apportionment of damages [is] each defendant liable only for the portion of the harm he himself caused." *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 811 (S.D.Ohio 1983).

 Grand Trunk seeks reimbursement for all response costs it has incurred and a declaration that co-defendants are liable for all future costs it will expend in connection with the Annex and Verona Well Field cleanup. As I have discussed above, evidence demonstrates that Grand Trunk was responsible for some of the contamination at the Annex as well as at the Verona Well Field. Grand Trunk has not met its burden of proving that as a matter of law, the response costs they incurred, or that they will incur as a result of co-defendants' contamination are divisible from those costs necessitated by its own spilling/dumping. Although co-defendants Thomas Solvent and Thomas development are liable for some portion of Grand Trunk's response costs that have been incurred or that will be incurred at these two sites, the method of apportioning costs has not been settled.

Thomas Solvent and Richard Thomas seek reimbursement from Grand Trunk for some or all of the response costs they have

incurred in relation to the Verona Well Field contamination. Grand Trunk is a responsible owner/operator under CERCLA, but the method of apportioning the costs borne or to be borne by the responsible parties has not been determined. The movants have not met their burden of proving that the costs are divisible.

*Liability for Contribution under CERCLA*

Thomas Solvent and Richard Thomas's motion for partial summary judgment against Grand Trunk for contribution is moot under section 9613 of CERCLA,[2] by the counter-plaintiffs' own concession. *See* Thomas Solvent and Richard Thomas's Brief Regarding Status of Unresolved Motions, August 28, 1989, at 5. Furthermore, the partial consent decree entered into by plaintiffs and Grand Trunk explicitly precludes Grand Trunk from liability for contribution to other parties regarding the costs covered by the decree.[3] Partial Consent Decree, para. V.E. *See also* 1986 *U.S. Code Cong. & Admin. News* 2835, 2861.

Grand Trunk moves for summary judgment against Thomas Solvent, Thomas Development and Richard Thomas for contribution under § 9613(f)(1) as to any judgment imposed against Grand Trunk jointly and severally with those defendants. Section 9613(f)(1) provides in relevant part that "any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) ... during or following any civil action ... under section 9607(a)." 42 U.S.C. § 9613(f)(1).

■ The fact that Grand Trunk has entered into a partial settlement with the government does not affect its right of action for contribution against other potentially liable parties. "Parties who settle for all or part of a cleanup or its costs ...

can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who ... were not parties to the settlement." 1986 *U.S. Code Cong. & Admin. News* at 2862.

■ A party does not have to show that it was not liable for the release of hazardous waste in order to have a right of action for contribution under CERCLA. *Polger v. Republic Nat'l Bank,* 709 F.Supp. 204, 209 (D.Colo.1989). The rationale for section 9613(f)(1) was Congress's hope that "[p]rivate parties [would] be more willing to assume the financial responsibility for some or all of the cleanup if they [were] assured that they [could] seek contribution from others." 1986 *U.S. Code Cong. & Admin. News* at 2862. This legislative history also makes it clear that equitable defenses, such as laches, unclean hands, and estoppel, though perhaps relevant in apportioning costs, should not bar a right of recovery under this provision. Accordingly, I find that Grand Trunk has a right of contribution from Thomas Solvent, Thomas Development, and Richard Thomas, all of whom are responsible or potentially responsible parties under section 9607, as discussed *supra.*

Section 9613 provides: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). There are, however, genuine issues of fact regarding the equities of apportioning liability. Grand Trunk asserts that it has no responsibility for the hazardous wastes discovered at the Annex, but as discussed *supra,* credible evidence shows otherwise. Until the parties have an opportunity to fully present their proofs to the fact finder, each party's proportionate liability for contribution cannot be determined.

**2.** 42 U.S.C. § 9613(f)(2) provides that "one who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."

**3.** The partial consent decree covered past costs, apart from Health Assessment, through July 1988. Opinion, July 5, 1989, at 10.

## CONCLUSION

Grand Trunk's motion for partial summary judgment is granted in part and denied in part. Thomas Solvent and Thomas Development, as owners/occupiers of the Raymond Road Facility and the Annex, are liable to Grand Trunk for at least part of its costs expended in response to the contamination at the Verona Well Field and the Annex. Whether Richard Thomas is liable for such response costs is still at issue. All three co-defendants, Thomas Solvent, Thomas Development, and Richard Thomas are liable to Grand Trunk for contribution. The basis for determining the amount of liability for the response costs has not been established; nor has the amount of contribution been established as a matter of law. If the parties themselves are unable to resolve the basis for determining the amount of liability and contribution, these issues will be left to the fact finder at trial.

Thomas Solvent and Richard Thomas's joint motion for summary judgment is also granted in part and denied in part. As an owner/occupier of the Annex and the Marshalling Yard, Grand Trunk is liable to Thomas Solvent and Richard Thomas for some portion of their response costs incurred as a result of the contamination at the Verona Well Field. The basis for determining the amount of liability is still at issue, and, if left unresolved, will be decided by the fact finder at trial. Thomas Solvent and Richard Thomas's claim against Grand Trunk for contribution is denied as moot.