UNITED STATES of America,
Plaintiff-Appellee,

v.

Royal N. HARDAGE; Special Master; Oklahoma National Stockyards Company; Joc Oil; Dal-Worth, Industries; Double Eagle; Samuel Bishkin, Doing Business as Eltex Chemical; L & S Bearing Company; Kerr-McGee Corporation; Cato Oil; Powell Sanitation Service, Inc.; Lowe Chemical; Monsanto; Textron Inc., Defendants.

UNITED STATES POLLUTION CONTROL, Defendant-Appellee,

v.

HARDAGE STEERING COMMITTEE; Advance Chemical Company; Allied-Signal, Inc.; American Telephone & Telegraph Company; Ashland Oil Inc.; Atlantic Richfield Company; Borg-Warner Corporation; Bridgestone/Firestone, Inc., Formerly Known as the Firestone Tire & Rubber Company; Bull HN Information, Formerly Honeywell Bull Inc.; Exxon Corporation; Gencorp Inc., (Diversitech General); Magnetic Peripherals, Inc.; Maremont Corporation; McDonnell-Douglas Corporation; Mobil Chemical Company; Nalco Chemical Company; Oklahoma Gas and Electric Company; The Oklahoma Publishing Company; Rockwell International Corporation, Formerly Known as, North American Rockwell; Texaco Refining and Marketing, Inc.; Texas Instruments Incorporated; UOP Inc.; Uniroyal Inc.; Westinghouse Electric Corporation; Weyerhaeuser, Third-party-defendants-Appellants,

A.H. Belo, Doing Business as Dallas Morning News, Third-party-defendant-Appellee,

American Airlines, Inc.; Baxter Health Care Corp., Doing Business as Pharmaseal Laboratories; Benjamin Moore & Company; Bob McBroom, Doing Business as American Furniture Stripping; Brown & Root, Inc.; Browning-Ferris, Inc., Formerly Known as Colt Industries Inc., Doing Business as Holly Specialty Products; Continental Industries Inc.; Crown Industries, Also Known as Crown Transport Co. (Geo International); Desoto, Inc.; Deluxe Corporation, Doing Business as Deluxe Check Printers, Inc.; Diffee Motor Co., Inc.; Engineering Enterprises, Inc.; First National Management, Also Known as First Oklahoma Corp., Formerly Known as First Oklahoma Bancorp, Inc.; Fruehauf Corporation (Hobbs & Kelsey Hayes Divisions); Halliburton Services, a Division of Halliburton Company; Interstate Truck Repair; Maclanburg-Duncan Company; McAlester Public Schools; OK Graphics; Oklahoma Natural Gas Company; Presbyterian Hospital, Inc. Doing Business as Presbyterian Health Foundation; Safety-Kleen Corporation; Shaklee Corporation; Sooner Ford; Southwestern Steel Rolling Door Company; the Agriculture & Nutrition Company; Thomas & Betts Corporation; Unisys Corporation, Formerly Known as Sperry Corporation, Doing Business as Sperry-Vickers; the University of Oklahoma; W.O.L. Cor-

poration, also Known as Wolverine Pipe; Webco Industries, Inc., Doing Business as *Southwest Tube Manufacturing Company;* Welch Enterprises, Inc., also Known as Welch Oil, Fourth Party Defendants–Appellants.

No. 90–6325.

United States Court of Appeals, Tenth Circuit.

Dec. 21, 1992.

See also 985 F.2d 1427.

Terry W. Schackmann of Spencer Fane Britt & Browne, Kansas City, MO (Jerome T. Wolf, Carl H. Helmstetter, Spencer Fane Britt & Browne, Jeffrey N. Martin, Hunton & Williams, Washington, DC, Kenneth N. McKinney, Robert D. Tomlinson, Robert L. Roark, McKinney, Stringer & Webster, Oklahoma City, OK, with him on the brief), for Hardage Steering Committee, et al.

John T. Stahr, Atty., Environmental and Natural Resources Div., Dept. of Justice, Washington, DC (Richard B. Stewart, Asst. Atty. Gen., David C. Shilton, Steven Novick, Gary S. Guzy, Attys., Environmental and Natural Resources Div., Dept. of Justice, Washington, DC, Charles De Saillan, Atty., Office of Enforcement, E.P.A., Washington, DC with him on the brief), for U.S.

Before TACHA, and BALDOCK, Circuit Judges, and BROWN, District Judge.[*]

BALDOCK, Circuit Judge.

This case arises from the cleanup effort at the Hardage Superfund Site (Hardage site), a federally controlled Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) site near Criner, Oklahoma. CERCLA § 101 *et seq.*, 42 U.S.C. § 9601 *et seq.* Third-party-defendants Hardage Steering Committee, et al (HSC) appeal from the district court's December 8, 1989 order granting, in part, the United States' motion for partial summary judgment and declaratory judgment on response cost issues, *United States v. Hardage*, 733 F.Supp. 1424 (W.D.Okla.1989), and

---

[*] The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

the district court's August 9, 1990 order entering Findings of Fact and Conclusions of Law for Remedy Selection Phase, *United States v. Hardage*, 750 F.Supp. 1460 (W.D.Okla.1990).

In 1986, the government filed this action against thirty-two generators and three transporters seeking injunctive relief under CERCLA § 106(a), 42 U.S.C. § 9606(a), to require them to clean up the Hardage site, and to recover costs incurred by the government under CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A). Most of these original defendants organized themselves as HSC defendants. HSC stipulated to liability for the presence of toxic waste at the Hardage site. The district court bifurcated the case into a remedy phase, at which a remedy for the cleanup of the Hardage site would be selected, and a liability phase, at which liability for the cleanup would be determined for those who did not stipulate to liability. Prior to the remedy phase of the trial, the government moved for partial summary judgment against HSC to recover response costs it incurred at the Hardage site. The district court granted the government's motion for all direct response costs and denied summary judgment for the government's indirect response costs. At the same time, the court granted the government's request for a declaratory judgment that HSC was liable for all of the government's future response costs. The district court entered this order prior to the commencement of the remedy phase of the trial.

At the remedy phase of the trial, the government and HSC presented the court with competing remedies. The court ultimately rejected the government's remedy and ordered implementation of HSC's remedy, with minor modifications. At the remedy phase the court also awarded the government its indirect response costs and additional direct response costs against HSC. The court awarded HSC only a portion of the response costs it counterclaimed against the government as a responsible party.[1]

HSC appeals the district court's entry of partial summary judgment for the government on two grounds. First, HSC contends that the court erred in granting partial summary judgment, holding it liable for the government's direct response costs, because of the existence of genuine issues of material fact. Second, HSC contends that summary judgment should be reversed because the court ultimately determined, during the remedy phase of the trial, that the government's trial remedy was inconsistent with the National Contingency Plan (NCP). HSC also contends that the declaratory judgment in favor of the government, holding that HSC is liable for all future government response costs, must be reversed because it does not allow HSC to contest these response costs as inconsistent with the NCP. Lastly, HSC appeals the district court's denial of certain HSC response costs, claiming that the court erroneously applied CERCLA § 122(e)(6), 42 U.S.C. § 9622(e)(6), to its claim for costs, and that the court disallowed certain HSC response costs based on the erroneous presumption that private parties may not recover litigation-related response costs. All issues have been certified under Fed. R.Civ.P. 54(b) for interlocutory review, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I. BACKGROUND

Defendant Royal N. Hardage owned and operated the Hardage waste disposal site. The site operated from September 1972 until November 1980, receiving more than twenty million gallons of waste for storage and/or disposal. In 1979, the Environmental Protection Agency (EPA) investigated and inspected the site and concluded that the site posed a threat to the public health, welfare, and environment. In September 1980, the United States Department of Justice (DOJ) filed suit in *United States v. Hardage*, No. CIV–80–1031–W (W.D.Okla.

---

**1.** The government stipulated to liability for the disposal of approximately 920,000 gallons of

hazardous substances at the Hardage site.

filed Sept. 8, 1980) [hereinafter *Hardage I*] against Mr. Hardage, the site owner.

In *Hardage I,* the court found that the Hardage site was dangerous and determined that Mr. Hardage was liable under the Resource Conservation and Recovery Act § 7003, 42 U.S.C. § 6973, and CERCLA § 106, 42 U.S.C. § 9606. The court also awarded the government partial judgment for its response costs incurred through December 1982. The government was unable to obtain payment from Mr. Hardage, however, because he filed for bankruptcy and received a discharge of indebtedness in June 1985. Thereafter, the government identified numerous other parties responsible for the contamination of the site, and notified them of their status as Potentially Responsible Parties (PRP's) pursuant to CERCLA § 104, 42 U.S.C. § 9604. In June 1986, the government filed the instant action, *United States v. Hardage,* No. CIV–86–1401–P (W.D.Okla. filed June 25, 1986) [hereinafter *Hardage II*] against the identified PRP's, the majority of whom ultimately formed HSC, to require them to clean up the Hardage site, and to recover response costs incurred by the government.

Throughout the proceedings in *Hardage I* and prior to the remedy phase of *Hardage II,* the EPA continued to investigate and study the Hardage site to develop an appropriate remedy, eventually settling on the remedy it presented at trial. Beginning in 1986, HSC also became involved with the cleanup of the site, instituting interim remedial measures as well as developing its own permanent remedy for the Hardage site. At the remedy phase trial of *Hardage II,* the court considered both the government's proposed remedy and HSC's remedy, and after determining that the HSC remedy was superior, the court ordered HSC's remedy to be implemented with minor modifications. Although the court conducted a de novo review of the competing remedies, it stated that had it limited its review to the EPA's administrative record, it would have rejected the government's remedy as arbitrary, capricious, and an abuse of discretion. Finally, the court found that the government's excavation component of its remedy did not satisfy NCP standards.[2]

## II. PARTIAL SUMMARY JUDGMENT

HSC contends that the district court erred in granting the government's motion for partial summary judgment for response costs because HSC established the existence of genuine issues of material fact. This argument has two components: (1) HSC claims that its expert affidavits raised a genuine issue of material fact that the government's response costs were excessive and unreasonable and therefore unrecoverable, and (2) HSC claims that the court erroneously rejected, as conclusory, its expert affidavits relating to whether the government's costs were in fact incurred at the Hardage site. HSC also contends that we should reverse the entry of summary judgment in favor of the government in light of the district court's subsequent trial determination that the excavation component of the government's remedy is inconsistent with the NCP. We review a district court's order granting summary judgment

**2.** The rejected government remedy involves excavation of hazardous wastes in addition to soil vapor extraction, which is a remedial measure designed to remove volatile organic compounds from soil and to transfer them to the airstream. The HSC remedy involves containment of hazardous wastes at the Hardage site by controlling surface water pathways, preventing direct human contact with wastes, controlling air emissions from the site, precluding the use of contaminated groundwater, and providing for a contingent response plan to ensure continued maintenance of the site. The court adopted HSC's remedy finding that it was supported by adequate data and analysis, was more cost-effective than the government's remedy, was feasible, posed little risk of adverse effects to workers, and best mitigated and minimized threats to the public health, welfare, and environment. The court rejected the government's remedy finding that, because the remedy was developed without adequate deliberation and consideration, it could ultimately fail and lead to future remedial action costs. The court also found that the government's remedy potentially threatened human health and the environment, and cost substantially more than HSC's remedy without any demonstrable benefit to the public health, welfare, or environment. The court also noted that the State of Oklahoma opposed the government's remedy.

de novo, *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

Section 107(a) of CERCLA imposes liability on four categories of persons, including owners and operators of hazardous waste sites, and generators and transporters of hazardous waste, for costs including:

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

*Id.* § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A). This section authorizes the government to recover *all* costs of removal or remedial response actions, incurred not inconsistent with the NCP. *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990).

CERCLA defines remove or removal as follows:

The terms "remove" or "removal" means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to ... action taken under section 9604(b) of this title ....

CERCLA § 101(23), 42 U.S.C. § 9601(23) (footnote omitted). The § 9604(b) authorized action, referenced in the above definition, includes:

such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as [the President] may deem necessary or appropriate to plan and direct response actions, to re-

cover the costs thereof, and to enforce the provisions of this chapter.

CERCLA § 104(b), 42 U.S.C. § 9604(b).

CERCLA goes on to define remedy or remedial action as follows:

The terms "remedy" or "remedial action" means [sic] those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment ... The term includes, but is not limited to, such actions at the location of the release as ... any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment ....

CERCLA § 101(24), 42 U.S.C. § 9601(24).

Finally, CERCLA defines respond or response actions as "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." CERCLA § 101(25), 42 U.S.C. § 9601(25).

As stated above, defendants found liable must pay *"all* costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan." CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) (emphasis added). The NCP was promulgated pursuant to CERCLA § 105, 42 U.S.C. § 9605, and is the EPA regulation that establishes procedures for selection of response actions. *See* 40 C.F.R. pt. 300 (1989).[3] If the government's response actions are in harmony with the NCP, the costs incurred pursuant to those actions are recoverable from liable parties. We have not previously addressed the issue of who has the burden of showing consistency or inconsistency with the NCP when the government is seeking response costs, however, we are guided by the Eighth Circuit's approach in *United States v. Northeastern Pharmaceutical & Chemical Co. (NEPACCO)*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

---

3. The 1989 NCP is relevant to this appeal.

■ First, we adopt the Eighth Circuit's holding that the burden of proof of inconsistency with the NCP rests with the defendant when the government seeks recovery of its costs. *Id.* at 747. *Accord R.W. Meyer, Inc.,* 889 F.2d at 1508. As the Eighth Circuit reasoned, CERCLA § 107(a)(4)(A) provides that the federal government can recover "all costs of removal or remedial action ... not inconsistent with the NCP." *NEPACCO,* 810 F.2d at 747 (quoting CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A)). By contrast, CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), provides that "any other person" can recover "any other necessary costs of response ... consistent with the [NCP]." *Id.* (quoting CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B)). This statutory language indicates that Congress intended that a different standard apply to parties other than the federal government seeking response costs, and that these parties affirmatively prove that their actions are necessary and consistent with the NCP. *See id.* When the government is seeking response costs, however, consistency with the NCP is presumed unless the defendant can overcome this presumption by presenting evidence of inconsistency. *Id.*

■ We further are guided by the Eighth Circuit's approach concerning what a defendant must show in order to demonstrate that the government's costs are incurred inconsistent with the NCP. In order to show that a government response cost is inconsistent with the NCP, a defendant must demonstrate that the government's response action giving rise to the particular cost is inconsistent with the NCP. *See NEPACCO,* 810 F.2d at 748. To show that the government's response action is inconsistent with the NCP, a defendant must demonstrate that the EPA acted arbitrarily and capriciously in choosing a particular response action to respond to a hazardous waste site. *Id.* We adopt the arbitrary and capricious standard of review "because determining the appropriate removal and remedial action involves specialized knowledge and expertise, [and therefore] the choice of a particular cleanup method is a matter within the discretion

of the EPA." *Id.* We follow the Eighth Circuit's lead and give deference to the EPA's choice of response action and will not substitute our own judgment for that of the EPA. *See id.*

■ This case differs from *NEPACCO,* however, in that the recoverability of certain government response costs was determined on the government's motion for summary judgment. Further, the entry of summary judgment occurred prior to the trial on the issue of the appropriate remedy for the Hardage site. We now turn to whether the government was entitled to summary judgment on the issue of HSC's liability for the government's response costs under CERCLA § 107(a)(4)(A).

Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden, the burden then shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "By its very terms, [the summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

In the instant case, in support of its motion for partial summary judgment, the government submitted extensive documentation that it incurred $5,441,201.25 in response costs. The documentation included affidavits of various EPA and Department

of Justice (DOJ) employees charged with accumulating the cost data. These affidavits were supported by summaries of cost data accumulated in connection with the Hardage site, and the source of that data. The district court held, and we agree, that the documentation offered in support of the government's response cost claim established a prima facie case that the government is entitled to response costs in the amount stated above.

Once the government established this prima facie case, the burden shifted to HSC to demonstrate that the government's response action that gave rise to the particular cost submitted at summary judgment, was inconsistent with the NCP in that the government's choice of response action was arbitrary and capricious. In opposition to the government's motion for summary judgment, HSC offered the affidavits of two expert witnesses that disputed each of the government's claimed costs on a variety of grounds. However, HSC failed to identify any response actions by the government that were inconsistent with the NCP. Instead, HSC claims that to the extent that the expert affidavits challenged individual costs as excessive and unreasonable, the affidavits created a genuine issue of material fact for trial. We disagree.

CERCLA § 107(a)(4)(A) is a strict liability statute. The only way a responsible party can escape liability for the government's costs incurred at a particular site is to demonstrate that the government's response actions—i.e., removal or remedial actions—underlying the costs, are inconsistent with the NCP. HSC contends that a challenge that an *individual cost* is excessive or unreasonable demonstrates inconsistency with the NCP. However, CERCLA § 107(a)(4)(A) does not limit the government's recovery to "all *reasonable* costs;" rather, it permits the government to recover "*all* costs of removal or remedial action incurred ... not inconsistent with the [NCP]." CERCLA § 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) (emphasis added). The NCP regulates *choice of response actions*, not costs. *See* 40 C.F.R. §§ 300.65, 300.68 (1989). Costs, by themselves, cannot be inconsistent with the NCP. Only response actions—i.e., removal or remedial actions— can be inconsistent with the NCP, which can be demonstrated by a showing that the government's choice of response action was arbitrary and capricious. As long as the government's choice of response action is not inconsistent with the NCP, its costs are presumed to be reasonable and therefore recoverable. *NEPACCO*, 810 F.2d at 748.

HSC argues that if the NCP fails to require reasonableness of individual costs, the EPA has failed its statutory mandate to develop a national contingency plan [NCP] that includes "means of assuring that remedial action measures are cost-effective over the period of potential exposure to the hazardous substances...." CERCLA § 105(a)(7), 42 U.S.C. § 9605(a)(7). First, we note that CERCLA mandates that the NCP assure cost-effectiveness for remedial actions only. CERCLA contains no corresponding mandate for removal actions. The NCP does assure that remedial action measures are cost-effective by requiring the government to consider cost when selecting remedial alternatives, 40 C.F.R. § 300.68(g)(1)(1989), and by requiring the government to select "a cost-effective remedial alternative." *Id.* § 300.-68(i). However, a challenge that an individual cost is excessive or unreasonable does not demonstrate inconsistency with either of these NCP provisions. Rather, to survive summary judgment by demonstrating inconsistency with section 300.68(g)(1) or 300.68(i) of the NCP, a defendant must show that the government acted arbitrarily and capriciously in failing to consider cost, or in selecting a remedial alternative that is not cost-effective. HSC's affidavits charging that certain government costs were excessive and unreasonable failed to show that the underlying government response action was inconsistent with the NCP in that the government's choice of response action was arbitrary and capricious. Because response action inconsistency with the NCP is the sole defense to liability for the government's costs, HSC failed to es-

tablish a genuine issue of material fact for trial.[4]

■ HSC next alleges that the district court erroneously rejected, as conclusory, its expert affidavits relating to whether the government's costs were in fact incurred at the Hardage site. The affidavits in question challenged certain government response costs by stating that the government failed to produce adequate documentation that the purposes for which some of these costs were incurred were response activities at the Hardage site. The district court dismissed these challenges as conclusory and therefore inadequate to defeat summary judgment. HSC argues that expert witness affidavits do not fail to defeat summary judgment solely because they are conclusory. Without deciding whether conclusory expert witness affidavits are sufficient, in general, to defeat summary judgment, we determine that the above challenge to the government's response costs is insufficient to defeat summary judgment here. The expert witness affidavits at issue amount to no more than a denial that the government's documentation establishes a prima facie case that it is entitled to recover $5,441,201.25 in response costs. As we have already stated, we believe the government's documentation does establish a prima facia case, and therefore HSC's expert affidavits fail to establish a genuine issue for trial. Just because HSC's denial comes in the form of expert witness affidavits does not make it any more significant than a simple denial made in a pleading and as such is insufficient to defeat summary judgment. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553 (nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial).

■ HSC also asserts that the entry of partial summary judgment for the government must be reversed in light of the district court's subsequent remedy phase determinations. Subsequent to the entry of summary judgment for the government on the issue of response costs, the district court conducted the remedy phase of the trial. At this phase, the court considered both the government's proposed trial remedy and HSC's proposed remedy. After determining that HSC's remedy was superior, the court ordered HSC's remedy to be implemented with minor modifications. Incident to its decision concerning which remedy to implement, the court stated that the excavation component of the government's trial remedy "does not ... satisfy NCP standards." *United States v. Hardage*, 750 F.Supp. 1460, 1481 (W.D.Okla.1990). HSC argues that because, at the remedy phase of the trial, the court found the excavation component of the government's trial remedy to be inconsistent with the NCP, and, because inconsistency with the NCP is a defense to the recoverability of the government's costs, we must now reverse the district court's prior entry of summary judgment. We disagree.

As an appellate court reviewing the entry of summary judgment, our review is confined to an examination of the materials before the court at the time the ruling was made. *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir.1985), *cert. denied sub. nom*, *Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). "Neither the evidence offered subsequently at the trial nor the verdict is relevant." *Id.* One who loses on summary judgment cannot give a retroactive effect to a trial verdict, using it in an effort to create a genuine issue of material fact at the time the court was considering the motion for summary judgment. *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1569 (Fed.Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987).

Here, HSC is attempting to give retroactive effect to the district court's determination at the remedy phase of the trial that the excavation component of the government's trial remedy is inconsistent with the

---

**4.** HSC also contends that the NCP incorporates the Federal Acquisition Regulations (FAR's), 48 C.F.R. § 1500 *et seq.*, and that if the government violates a provision of the FAR's then its associated costs are inconsistent with the NCP. We find HSC's argument irrelevant because HSC, at summary judgment, failed to provide any evidence that the government violated any provision of the FAR's.

NCP. This HSC cannot do. The time at which HSC was required to establish the existence of a genuine issue of inconsistency with the NCP, as to the particular response costs submitted by the government at summary judgment, was long past when the remedy phase of the trial began. To defeat the government's claim for those response costs, HSC was required to establish a genuine issue of inconsistency with the NCP at the summary judgment phase, when recoverability of those particular government response costs was at issue. The court's subsequent remedy phase trial determination is irrelevant to the prior entry of summary judgment on the response cost issue. Our review is limited to the materials the district court had before it at the time of the ruling, and as we stated above, based on those materials, summary judgment was appropriate.

## III. DECLARATORY JUDGMENT

■ HSC contends that the declaratory judgment entered in favor of the government must be reversed because it bars HSC from contesting future response costs submitted by the government, on the ground that the costs were incurred inconsistent with the NCP. We agree that, to the extent the entry of declaratory judgment prevents HSC from contesting future government costs on the basis that the underlying government response actions giving rise to the costs are themselves inconsistent with the NCP, the judgment must be reversed.

CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) specifically provides that:

> In any action [for recovery of response costs under CERCLA § 107] ... the court shall enter a declaratory judgment on *liability* for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

(emphasis added). Thus, the entry of declaratory judgment *on the issue of liability* for future response costs is appropriate. The statute does not, however, contemplate preventing challenges to future costs, submitted under the declaration of liability, as

having been incurred pursuant to response actions that are inconsistent with the NCP. The clear language of the statute dictates that a declaratory judgment determines *liability* for future response costs, not *recoverability* of those costs. A defense that the government's response costs are incurred pursuant to response actions that are inconsistent with the NCP is a defense to the recoverability of particular response costs, not a defense to liability for those costs. *See United States v. Kramer*, 757 F.Supp. 397, 436 (D.N.J.1991). Therefore, a defendant who is declared liable for future response costs may still challenge those costs as unrecoverable because the underlying response actions giving rise to the costs are inconsistent with the NCP. *See e.g., Kelley v. Thomas Solvent Co.*, 790 F.Supp. 710, 716 (W.D.Mich.1990); *United States v. Fairchild Industries, Inc.*, 766 F.Supp. 405, 415 (D.Md.1991); *O'Neil v. Picillo*, 682 F.Supp. 706, 730 (D.R.I.1988); *United States v. Northeastern Pharmaceutical & Chemical Co. (NEPACCO)*, 579 F.Supp. 823, 852 (W.D.Mo.1984), *aff'd in part and rev'd in part*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987)

In its order granting, in part, the government's motion for partial summary judgment and declaratory judgment on response costs issues, the district court stated, "the United States' motion for a declaratory judgment for liability for future response costs associated with the Hardage site ... shall also be granted." *United States v. Hardage*, 733 F.Supp. 1424, 1439 (W.D.Okla.1989). Thereafter, in its Judgment and Order filed on August 9, 1990, the district court set out the procedure for the government to collect its future response costs from HSC. *United States v. Hardage*, No. CIV-86-1401-P (W.D.Okla.1990). The court indicated that should HSC dispute any portion of the government's claim for costs, and the dispute cannot be resolved between the parties, the "disputed claim [shall] be brought to the [c]ourt for resolution." *Id.* at 10–11. This language makes it unclear as to whether the declaratory judgment, as entered by the court, permits HSC to dispute costs

submitted by the government on the ground that the response actions giving rise to the costs are inconsistent with the NCP. However, a statement by the court in its August 9, 1990 Findings of Fact and Conclusions of Law for Remedy Selection Phase indicates that the court did not contemplate allowing HSC to contest the recoverability of the government's response costs on the basis of inconsistency with the NCP, and to this extent we hold that the court erred.

In its Findings of Fact and Conclusions of Law for Remedy Selection Phase, the district court, in response to a defense by the HSC concerning costs submitted by the government, dismissed HSC's defense stating, "[h]owever, ... the [court] granted the United States a declaratory judgment for all future response costs. Therefore, if the United States presents proof that these costs were incurred, it is entitled to recover these costs." *United States v. Hardage*, 750 F.Supp. 1460, 1500 (W.D.Okla.1990). Although HSC's defense to these costs was not based on inconsistency with the NCP,[5] we believe the court's statement indicates that the court, under the declaratory judgment, would not permit *any* HSC challenge to the recoverability of future government response costs as long as the government presents proof that the costs were incurred. This is reversible error, because, as we stated above, a declaratory judgment under CERCLA § 113(g)(2) determines liability for future response costs, not recoverability, and therefore, a challenge to the recoverability of future response costs— i.e., that the response actions giving rise to the costs are inconsistent with the NCP— must be allowed.

## IV. HSC RESPONSE COSTS

HSC appeals the district court's denial of certain HSC response costs, claiming that the court erroneously applied CERCLA § 122(e)(6), 42 U.S.C. § 9622(e)(6), to its claim for response costs, and that the court disallowed certain HSC response costs

based on the erroneous presumption that private parties may not recover litigation-related response costs. We review questions of law de novo, *Estate of Holl v. Commissioner*, 967 F.2d 1437, 1438 (10th Cir.1992), and findings of fact under a clearly erroneous standard, *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir.1992).

At the remedy phase of the trial, HSC counterclaimed against the government as a responsible party for response costs it incurred in instituting interim remedial measures and developing its trial remedy. The district court awarded HSC $3,716,-695.23 of its claimed $9,530,984.72 in response costs. The HSC costs allowed by the court included the costs of implementing interim remedial measures, and $3,220,-000 of HSC's costs of conducting a second operable unit Remedial Investigation/Feasibility Study pursuant to a consent decree entered by the court. The court disallowed the remainder of HSC's costs finding them "not necessary costs of response ... consistent with the [NCP]." *United States v. Hardage*, 750 F.Supp. 1460, 1519 (W.D.Okla.1990) (quoting CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B)). Further, the court found that, based on the amount of waste at Hardage attributable to the government, the government was liable for 8.36% of HSC's costs.

HSC contends that the district court erroneously applied CERCLA § 122(e)(6), 42 U.S.C. § 9622(e)(6), to its claim for response costs thereby disallowing costs which it was entitled to recover. We disagree. CERCLA § 122(e)(6) states:

> When either the President, or a potentially responsible party pursuant to an administrative order or consent decree under this chapter, has initiated a remedial investigation and feasibility study for a particular facility under this chapter, no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President.

---

5. HSC objected to the government's summary of its DOJ direct costs because it had not had an

opportunity to review the documentation.

HSC contends that the district court improperly relied on this section and, as a result, disallowed all HSC response costs incurred without advance government approval. HSC argues that § 122(e)(6) does not apply to CERCLA § 106(a), 42 U.S.C. § 9606(a), injunction actions. Because we find that.the court did not, in fact, apply § 122(e)(6) in ˙disallowing any HSC response costs, we need not decide whether § 122(e)(6) is applicable to § 106(a) injunction actions.

In its Findings of Fact and Conclusions of Law for Remedy Selection Phase, the district court included a description of § 122(e)(6) as part of its general legal discussion of CERCLA. *Hardage*, 750 F.Supp. at 1511. However, following an extensive review of the record, we find that the district court did not rely on this provision in disallowing any of HSC's claimed costs. For every HSC cost disallowed, the district court found that HSC failed to meet its burden of demonstrating that the cost was necessary and consistent with the NCP. This is undoubtedly the standard that applies to private party recovery of response costs. *See* CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B).

HSC directs our attention to language by the court inviting the government to indicate with which costs the government agreed, and further argues that it was not mere coincidence that the only costs allowed by the court were those costs that the government did not dispute. We agree that it was not a coincidence, however, we believe that in requesting the government's response to the costs claimed by HSC, the court was merely asking whether the government, at trial, conceded that HSC was entitled to any of the costs. The court was not inquiring as to whether HSC had obtained advance government approval prior to incurring these costs, as would be required by § 122(e)(6). Rather, once the government conceded that certain HSC costs were necessary and incurred consistent with the NCP, the court awarded these costs as undisputed. Therefore, HSC's argument that the court erroneously relied on § 122(e)(6) is without merit.

HSC's last contention is that the district court erroneously disallowed certain HSC response costs as litigation-related. HSC claims that the district court disallowed, as a matter of law, all costs that it determined were litigation-related. As a result, HSC now invites us to conduct de novo review and rule on whether private parties are entitled to recover litigation-related costs under CERCLA. Because we determine that the district court clearly disallowed HSC's costs finding that HSC failed to prove that they are "necessary costs ... consistent with the [NCP]," CERCLA § 107(a)(4)(B), we decline the invitation, and instead determine whether the court's factual determination that certain litigation-related costs were not necessary and consistent with the NCP was clearly erroneous.

In its Findings of Fact and Conclusions of Law for Remedy Selection Phase, the district court carefully set out the legal standard that applies when a private party is seeking cost recovery from liable persons under CERCLA. *See Hardage*, 750 F.Supp. at 1509–11. The court correctly determined that, under the language of CERCLA, private parties may recover "any other necessary cost of response incurred ... consistent with the [NCP]." CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B). In the context of discussing what is a necessary response cost and how a response cost is incurred consistent with the NCP, the court addressed litigation-related costs. Finding that there is no express authority for the recovery of costs incurred to assist counsel in their defense of litigation, *Hardage*, 750 F.Supp. at 1511, the court went on to apply the "necessary and consistent with the NCP" standard. Although the court ultimately disallowed all HSC costs that it determined were litigation-related, there is nothing in the record or court's opinion to suggest that the court found these costs per se unrecoverable and therefore disregarded the "necessary and consistent with the NCP" standard. On the contrary, in its conclusions of law, the court specifically stated that the various HSC costs "borne primarily to support the HSC's litigation position are not 'necessary costs of response ... consistent with the [NCP].'"

**1448**

*Id.* at 1519 (quoting CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B)). Therefore, because the court applied the correct legal standard in determining which costs submitted by HSC are recoverable, we now review the court's factual determinations under a clearly erroneous standard.

In *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 (10th Cir.1992), we noted that CERCLA fails to define "necessary costs of response." However, we noted that CERCLA did define the term response as a removal action or a remedial action, and in turn defined removal and remedy. *Id.* (citing CERCLA §§ 101(25), (23), (24), 42 U.S.C. §§ 9601(25), (23), (24)). We determined that the heart of the definitions of removal and remedy, *see supra* Part I, are "directed at containing and cleaning up hazardous substance releases." *Id.* at 1535. We therefore concluded that "necessary costs of response" must be necessary to the containment and cleanup of hazardous releases. *Id.* at 1535–37.

Given the context of this litigation, it was not clearly erroneous for the court to determine that costs, incurred by HSC to defend against the government's § 106(a) injunction action, were not necessary to the containment and cleanup of hazardous releases at the Hardage site. Unlike a situation where a site may remain hazardous absent a private party's involvement, the EPA has been involved at the Hardage site since 1979. The EPA conducted studies of the site and developed a remedy to contain and clean up the site. The EPA then sued for an injunction to compel the responsible parties to enact its remedy. Although the EPA's trial remedy was rejected by the court, the court had the authority to order the EPA to revise its remedy until it developed an acceptable method of dealing with the Hardage site. *See generally* CERCLA § 106(a), 42 U.S.C. § 106(a) (district court has jurisdiction to grant such relief as the public interest and equities of the case may require). In other words, regardless of whether HSC ever conducted any studies of the site, or developed its own remedy, the Hardage site would be cleaned up.

HSC, on the other hand, began investigating remedial alternatives upon being named as a defendant in the government's CERCLA § 106(a) injunction action. HSC's costs, although likely necessary for the development of its trial remedy, are not necessary to the containment and cleanup at the Hardage site. This is true even though HSC's remedy was ultimately accepted by the court with modifications, for, as stated above, the court has the authority to compel the EPA to submit an acceptable remedy for the cleanup of Hardage, with or without any involvement on the part of HSC. We hold that when a private party incurs response costs in developing its own remedy, solely to defend against the government's § 106(a) injunction action, the private party's response costs are not "necessary" within the meaning of CERCLA § 107(a)(4)(B). For these reasons, we hold that it was not clearly erroneous for the court to have concluded that HSC's litigation-related costs were not necessary and therefore unrecoverable.

In sum, the district court's order granting the government partial summary judgment for recovery of response costs is AFFIRMED. The district court's judgment denying, in part, HSC's recovery of response costs against the government as a liable party is AFFIRMED. The district court's entry of declaratory judgment in favor of the government is REVERSED and REMANDED for further proceedings consistent with this opinion.

