UNITED STATES of America, Plaintiff,

v.

Helen KRAMER, et al., Defendants.

STATE OF NEW JERSEY, DEPART-
MENT OF ENVIRONMENTAL
PROTECTION, Plaintiffs,

v.

ALMO ANTI–POLLUTION SERVICES
CORP., et al., Defendants.

Civil Nos. 89–4340 (JBS), 89–4380 (JBS).

United States District Court,
D. New Jersey.

Oct. 31, 1995.

Deborah Reyher, Environmental Enforcement Section, Lands & Natural Resources Division, United States Department of Justice, Washington, DC, for United States.

Emerald E. Kuepper, Deputy Attorney General, Division of Law & Public Safety, Trenton, New Jersey, for State of New Jersey.

William H. Hyatt, Jr., Pitney, Hardin, Kipp & Szuch, Morristown, New Jersey, for Defendants.

Franklin J. Riesenburger, Vineland, New Jersey, for Third–Party Plaintiffs.

Jonathan Eron, Thatcher, Lonabaugh, Thatcher & Passarella, Runnemede, NJ, for Transporter Third–Party Defendants.

Robert B. McKinstry, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pennsylvania, for Municipality Third–Party Defendants.

Kenneth Mack, Fox, Rothschild, O'Brien & Frankel, Lawrenceville, NJ, for Third–Party Generators.

## OPINION

SIMANDLE, District Judge:

Presently before the court in this Superfund cost-recovery action is the motion in limine of the plaintiff United States to narrow issues for trial pursuant to Fed.R.Civ.P. 12(f), 16(c), and 57. The plaintiff asks this court to make two findings: 1) that it is the law of this case that defendants' arguments that costs are excessive, unreasonable, duplicative, not cost-effective, and improper do not allege inconsistency with the National Contingency Plan ("NCP"), do not provide a defense to a cost recovery action under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), *as amended,* 42 U.S.C. § 9601 *et seq,* and have been stricken as defenses in this case; and 2) that, as a

matter of law, those same arguments do not allege inconsistency with the NCP and therefore do not provide defenses in a cost recovery action under section 107(a) of CERCLA.[1]

This motion thus requires this court to determine what Congress meant when enacting section 107(a) of CERCLA, 42 U.S.C. § 9607(a), which provides in relevant part: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section, [a responsible party] shall be liable for all costs of removal or remedial action incurred by the United States Government or a State or an Indian Tribe not inconsistent with the national contingency plan."

For reasons herein discussed, the plaintiff's motion will be granted.

1. The plaintiff notes that it is *"not* seeking to preclude any allegation that EPA failed to consider cost-effectiveness in *selecting* the remedy for the Kramer Site, as that *is* an affirmative NCP requirement (40 C.F.R. § 300.68(h)(1) (1982)), with which we contend EPA ["Environmental Protection Agency"] complied." (Pl.Mem. at 1). In addition, the government states that it is not

    seeking to foreclose proof that any particular cost is not, in fact, a cost incurred in responding to the release or threatened release of hazardous substances.... the United States does not oppose discovery on any aspect of costs that Defendants wish to pursue, as it is at least conceivable that Defendants' pursuit of what they contend to be 'excessive' costs could lead to affirmative evidence of fraud.

    (*Id.* at 1–2). Finally, the plaintiff notes that it does not

    seek to preclude Defendants' procedural argument that EPA was required to issue an Explanation of Significant Differences in connection with the construction of the remedy, pursuant to 40 C.F.R. § 300.435(c)(2) (1990). Although the United States disputes that assertion, this motion will not affect the ultimate presentation of that issue to this Court for resolution.

    (*Id.* at 2).

2. Moreover, because this issue is a matter of law and not fact, defendants' arguments that this motion is premature are without merit. This decision will not impact the discovery available to defendants and would not be altered by any additional factual information which the defendants might provide. Consequently, this court finds no reason to delay reaching a decision. This court previously ruled in its Opinion and Order filed May 4, 1995 herein, that expansive discovery is available to defendants concerning the implementation of the Kramer Landfill reme-

## BACKGROUND

The United States and New Jersey brought these consolidated cases pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover costs incurred at the Helen Kramer Landfill in Mantua, New Jersey. This is a major Superfund site at which the federal and state governments have incurred substantial costs to remedy conditions at the landfill and its environs. There are approximately 30 direct defendants (depending on how several joint entities are counted) which are alleged to be responsible parties as generators and/or haulers of hazardous substances pursuant to section 107(a)(3) & (4), 42 U.S.C. § 9607(a)(3) & (4). Several hundred third-party defendants also have been joined. Because this motion concerns a question of law,[2] a precise factual background is not necessary.[3]

dy, including all items for which the plaintiff seeks reimbursement of costs. (Opinion and Order, filed May 4, 1995 at 19–22). Likewise much discovery has been permitted regarding post-ROD ("Record of Decision") remedy selection involving modifications of the originally-selected remedial plan. (*Id.* at 17–19, 22–30).

3. From approximately 1963 to 1981, the 77–acre Helen Kramer Landfill ("the Site") was used for the disposal of municipal and industrial wastes. The State of New Jersey revoked the landfill's registration in early 1981, and on March 3, 1981, a New Jersey state court ordered the cessation of operations.

    On September 8, 1983, the EPA placed the Site on the National Priorities List ("NPL"), a list of the nation's most threatening hazardous waste sites. Pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, the EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") from July 1983 until September 1985 to investigate contamination at the Site.

    On September 27, 1985, the plaintiff issued a Record of Decision ("ROD") selecting certain remedial actions to be taken at the Site. Among the major remedies selected were: 1) construction of a groundwater/leachate collection trench; 2) collection and treatment of groundwater/leachate from the trench; 3) construction of a clay cap over the Site; 4) construction of an upgradient slurry wall; and 5) construction of an active gas collection and treatment system.

    Subsequent to the issuance of the ROD, the EPA made at least two changes to the remedy selected in the ROD: 1) the addition of downgradient slurry wall ("Slurry Wall"); and 2) the substitution of a roller compacted concrete wall ("RCC Wall") for the relocation of Edwards Run. In a December, 1987 value engineering study,

## I. *Law of the Case*

We will first consider whether it is the law of this case that the defendants' arguments that costs are excessive, unreasonable, duplicative, not cost-effective, and improper do not allege inconsistency with the NCP, do not provide defenses in a cost recovery action, and have been stricken as defenses to cost recovery. The United States alleges that the 1991 opinion of the late Chief Judge John F. Gerry, *United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991), established the law of the case with respect to these issues, and that the undersigned, to whom this case was reassigned on February 8, 1995, is not free to vary the determination therein.

■ The Third Circuit "follows a restrictive view of the circumstances in which the work of one judge may be undone by another. Under the law of the case doctrine, once an issue has been decided, it will not be relitigated in the same case except in unusual circumstances." *Geibel v. United States*, 667 F.Supp. 215, 219 (W.D.Pa.1987), *aff'd*, 845 F.2d 1011 (3d Cir.1988). *See also United States Gypsum v. Schiavo*, 485 F.Supp. 46, 55 (E.D.Pa.1979), *aff'd in part, rev in part*, 668 F.2d 172 (3d Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); *United States v. Kikumura*, 947 F.2d 72, 77 (3d Cir.1991) ("[U]nder the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)); *Devex Corp. v. General Motors Corp.*, 857 F.2d 197 (3d Cir.1988), *cert. denied sub nom. Technograph Liquidating Trust v. General Motors Corp.*, 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989); *Cowgill v. Raymark Indus.*, 832 F.2d 798 (3d Cir.1987); *Harrington v. Lauer*, 893 F.Supp. 352 (D.N.J.1995). Moreover, the Supreme Court has held that once an issue has been decided or "decided by necessary implication[,]" reconsideration of that issue is precluded. *Christianson*, 486 U.S. at 819, 108 S.Ct. at 2179. In other words,

[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.

*Id.* at 817, 108 S.Ct. at 2178.

■ Naturally, this doctrine is not without exception. As the Supreme Court has held, while the "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (citing *Southern R. Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 126–27, 67 L.Ed. 283 (1922); *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). The Third Circuit recognizes, for example, the following exceptions to the law of the case doctrine: when a timely motion for reconsideration is made before a second judge when the first judge is not available; when evidence not considered by the first judge becomes available for consideration by the second judge; when a supervening rule of law renders invalid the decision rendered by the first judge; and when the first judge's decision was clearly erroneous and would work a manifest injustice. *Schultz v. Onan Corp.*, 737 F.2d 339 (3d Cir.1984). With this frame of reference, we will evaluate the law of the case.

The plaintiff asserts that Chief Judge Gerry, in his February 8, 1991 opinion, held that defendants' claims that costs were excessive, not cost-effective, duplicative, unreasonable, and improper did not allege inconsistency with the NCP and therefore were stricken as

---

the engineers hired by the United States Army Corps of Engineers to design the remedial action, URS, recommended the addition of the Slurry Wall. In order to stabilize the east slope component of the remedial action, the RCC Wall was recommended as a substitute for the relocation of Edwards Run. Construction has been completed, and long-term treatment has begun.

These changes, and the manner of implementation, have allegedly increased the cost of the clean-up at the Site, and, consequently, have become the source of controversy. Depending on which estimates of cost are used as a reference, earliest estimates are approximately one third of the actual costs for which the plaintiff seeks reimbursement in this suit.

852

defenses to cost recovery. (Pl. Mem. at 2–3). The plaintiff cites to the following holding of Judge Gerry's opinion to support its argument: "terms used by defendants in their affirmative defenses such as 'proper' or 'improper,' 'remote, speculative and contingent,' and 'unreasonable, duplicative and not cost-effective,' do not state an appropriate challenge to the propriety of the government's response costs, and will be stricken." *United States v. Kramer*, 757 F.Supp. 397, 436 (D.N.J.1991).

The United States "asks this Court to affirm Judge Gerry's ruling that the NCP imposes no requirement that the United States minimize the cost of implementing a remedy, and that even 'excessive' and 'unreasonable' response costs are recoverable.... [and that] 'CERCLA does not impose a duty on the Government to mitigate response costs.'" (Pl. Mem. at 3). In other words, the plaintiff wants this court to affirm Judge Gerry's holding that

> the only criterion for the recoverability of response costs under CERCLA is whether costs are consistent with the [NCP]. All costs not inconsistent with the NCP are recoverable. Defendants have the burden to prove that response costs are inconsistent with the NCP.

*Kramer*, 757 F.Supp. at 436 (citing *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747–48 (8th Cir. 1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) ("*NEPACCO*")).

The defendants argue that Judge Gerry did not so hold. Instead, they contend that "Judge Gerry's ruling pertained solely to defendants' affirmative defenses to *liability*, not to the recovery of damages." (Df. Mem. at 3) (emphasis in original). To support this argument, the defendants cite the following passage of Judge Gerry's opinion: "a defense that the government's response costs are inconsistent with the NCP is only a defense to the recoverability of particular response costs, but not to liability." 757 F.Supp. at 436. The defendants, however, fail to consider the previous paragraph in the opinion which clearly states that arguments that costs are excessive and unreasonable do not challenge the propriety of the response costs.

The defendants also omit the word "moreover" which begins the sentence they cite. This word implies that the sentence reinforces the earlier statements and adds emphasis. It does not suggest that the statement which follows is the only or even the main finding.

In addition, referring to the language of section 107(a) of CERCLA, the defendants argue that "Judge Gerry never decided the meaning of the phrase 'all costs of removal or remedial action not inconsistent with the NCP' in this case." (Df. Mem. at 3). Consequently, they contend that this court does not know whether wasteful or excessive costs are costs of removal or remedial action or whether failure to comply with federal procurement regulations results in inconsistency with the NCP. (*Id.* at 3–4). The defendants also argue that "Judge Gerry's statement that CERCLA does not impose a duty on the government to *mitigate* response costs, *id.* at 420, was not, and should not be twisted into, a license to squander money." (*Id.* at 4).

The defendants further claim that wasteful, unnecessary, unreasonable, or excessive costs may not be recovered by the government because such costs are, as a matter of law, inconsistent with CERCLA and the NCP, and that the law of the case as established by Judge Gerry supports this view. (*Id.*). The defendants cite no support for any of these allegations. Based on these allegations, however, the defendants claim that their cost arguments still are available as defenses to the recovery of response costs.

In order to interpret Judge Gerry's opinion, this court must consider what question he was addressing when he held that arguments that costs are unreasonable, duplicative, improper, excessive, and not cost-effective do not state an appropriate challenge and would be stricken. He could have meant that such arguments were not valid defenses to cost recovery, as the plaintiff contends, or he arguably could have meant that such arguments were stricken only with regard to liability, as the defendants assert. When evaluating this question, this court will consider both the plain language of Judge Gerry's opinion and the submissions made by defendants in opposition to the plaintiff's mo-

tion to strike which Judge Gerry addressed in the 1991 opinion.

The defendants first made assertions concerning the excessive, unreasonable, improper, duplicative, and non-cost-effective nature of the costs that the plaintiff seeks to recover as affirmative defenses in their answers to the plaintiff's complaint and amended complaint. As such, the defendants could have intended these arguments as either defenses to liability or defenses to cost recovery, or both. The language of both the submissions and the opinion, however, indicate that these arguments were raised as defenses to cost recovery.

For example, in its Memorandum of Law in Opposition to the United States' Motion to Strike its Separate Defenses ("Mem. Law Opp.") at 29, defendant Morton International ("MI") interpreted its fifteenth defense as applying to cost recovery. The fifteenth defense provided as follows: "Plaintiff's costs incurred or to be incurred at the Helen Kramer Landfill are unreasonable, duplicative and not cost-effective." (MI Ans. at 5). MI stated its defense could not be stricken as a matter of law for three reasons. (Mem. Law Opp. at 29). First, MI asserted that there were "factual and legal questions as to whether the United States is a liable party. If it is liable, it will not be permitted to recover all of its response costs." (*Id.*). Second, MI argued that "to the extent that the United States seeks to recover costs which technically may fall within the definition of 'response' costs but which are so poorly documented that they are remote and speculative, they may not be recovered." (*Id.*). Third, MI contended that "the United States and the State of New Jersey may be seeking to recover the same costs. Clearly, double recovery is not permitted—even under CERCLA." (*Id.*). It is apparent from these arguments that MI was not contesting its potential joint and several liability under CERCLA; instead, it intended its affirmative defense to apply to cost recovery issues.

In addition, in a letter[4] to Judge Gerry dated August 31, 1990, explaining the Defen-

dants' Joint Supplemental Memorandum of August 17, 1990, the defendants clearly stated that their costs arguments applied to the plaintiff's ability to recover costs, not to the defendants' liability. (Df. Let. at 10). The defendants responded to the plaintiff's argument that consistency with the NCP should not be considered when determining liability by stating that "[t]his affirmative defense is not raised as an absolute defense to liability." (*Id.*). Instead, "[d]efendants in this action raise the government's failure to act in a manner not inconsistent with the National Contingency Plan as a defense in contribution to the government's full recovery of response costs." (*Id.*).

■ The defendants also noted that "it is axiomatic that an affirmative defense need not provide defendant with a complete defense to liability in order to be properly asserted in an answer to a complaint—a partial defense is sufficient." (*Id.*) (quoting *Shenandoah Life Ins. Co. v. Hawes*, 37 F.R.D. 526, 529 (E.D.N.C.1965) (a defense that is not a complete but a partial defense will not be stricken); *Folsom v. Dell Publishing Co.*, 131 F.Supp. 464, 465 (S.D.N.Y.1955) (partial defense is valid for purposes of mitigating damages)). Because there is joint and several liability under CERCLA, any defense that seeks to mitigate damages paid, reduce contribution, or prevent the full recovery of response costs is, in fact, a defense to cost recoverability, not liability. Regardless of the labels used, it is clear from their own statements and citations that the defendants were not arguing that they had no liability, but rather that the plaintiff could not recover full costs.

Finally, the plain language of Judge Gerry's opinion indicates that he struck the defendants' arguments as they applied to cost recovery. Judge Gerry stated that

> the only criterion for recoverability of response costs under CERCLA is whether costs are consistent with the National Contingency Plan (NCP). All response costs not inconsistent with the NCP are recover-

---

4. This letter was submitted by attorneys for UNISYS Corp., Morton Thiokol, Bridgestone/Fire-stone Inc., Atochem, Inc., and Nabisco, Inc.

able.... Therefore terms used by the defendants in their affirmative defenses such as 'proper' or 'improper,' 'remote, speculative and contingent,' and 'unreasonable, duplicative and not cost-effective,' do not state an appropriate challenge to the propriety of the government's response costs, and will be stricken.

757 F.Supp. at 436. Moreover, earlier in the opinion, Judge Gerry held that "CERCLA does not impose a duty upon the Government to mitigate response costs." 757 F.Supp. at 420. Analyzing the context in which he struck the defenses, i.e., the recoverability of costs, in conjunction with the finding that the plaintiff did not have a duty to mitigate costs, it becomes clear that Judge Gerry intended to strike defendants' arguments as defenses to cost recoverability.[5]

As mentioned above the law of the case doctrine does not completely bind this court. Under extraordinary circumstances such as when the initial decision was clearly erroneous and would work a manifest injustice, when evidence not considered previously becomes available, and when a supervening rule of law renders invalid the original decision, this court could modify Judge Gerry's ruling. However, we do not find that any such extraordinary circumstances apply to this case and so find no reason to alter Judge Gerry's ruling.

■ Accordingly, we find that, as the law of the case, arguments that costs are unreasonable, duplicative, not cost-effective, improper, and excessive are not appropriate challenges to the propriety of the plaintiff's costs, do not allege inconsistency with the NCP, do not provide a defense in a cost recovery action, and have been stricken in this case. Consequently, we will grant the first portion of the plaintiff's motion.

## II. Costs of Remedial Action "Not Inconsistent with the National Contingency Plan"

We next decide whether, as a matter of law, arguments that costs are excessive, not cost-effective, improper, duplicative, and unreasonable allege inconsistency with the NCP and therefore provide a defense in a cost recovery action under section 107(a) of CERCLA.

### A. Summary of Arguments

The plaintiff argues that, as a matter of law, claims that costs are unreasonable, improper, not cost-effective, duplicative, and excessive do not provide any defense in a cost recovery action because they do not allege inconsistency with the NCP. The plaintiff asserts that section 107(a) of CERCLA, 42 U.S.C. § 9607(a),[6] makes the statutory stan-

---

5. In fact, Judge Gerry's opinion has been cited for this very proposition. See United States v. Pretty Products, Inc., 780 F.Supp. 1488, 1500 (S.D.Ohio 1991).

6. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides as follows:

(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner of operator of a vessel or facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for the transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian Tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

dard for cost recovery clear because it states that "notwithstanding any other provision of law.... [the Government may recover] all costs of removal or remedial action.... not inconsistent with the national contingency plan." The plaintiff contends that, limited by this section to considering only the language within the CERCLA statute itself and guided by the clear language of section 107(a), the cost arguments that the defendants raise are ineffective as defenses in a cost recovery action. The plaintiff does not deny that the effect of CERCLA may seem draconian but rather claims that the recovery of all costs of remedial action, whether or not "reasonable," "efficient," or "cost-effective," clearly reflects the intent of Congress.

The plaintiff asserts that by the express language of the section 107(a), any statutes, rules, or regulations other than the NCP are irrelevant to determining whether the United States may recover its costs. Likewise, the plaintiff notes that section 107(a)'s reference to the sole available defenses enumerated in section 107(b) of CERCLA, 42 U.S.C. § 9607(b),[7] provides the only defenses to recovery of "all response costs," none of which apply herein. Moreover, the plaintiff argues that to challenge costs, "a defendant 'must identify a particular provision in the NCP with which a specific response action is in-consistent.'" (*Id.* at 12) (quoting *United States v. American Cyanamid Co.,* 786 F.Supp. 152, 161 (D.R.I.1992)).

The plaintiff further argues that only actions can be inconsistent with the NCP, while costs themselves cannot. (*Id.* at 12, n. 11) (citing *United States v. Hardage,* 982 F.2d 1436, 1442–43 (10th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993) ("in order to show that a government response cost is inconsistent with the NCP, a defendant must demonstrate that the government's response action giving rise to the particular cost is inconsistent with the NCP.... The NCP regulates *choice of response action,* not costs.... Costs, by themselves, cannot be inconsistent with the NCP") (emphasis in the original)). Consequently, the plaintiff argues that the only defense to cost recovery is that the costs arise from a remedy that is not consistent with the NCP.

In addition, the plaintiff claims that "there are no 'cost-effectiveness requirements' of the NCP that govern or limit the cost of implementing a remedy." (*Id.* at 4). Instead, plaintiff contends that cost must be considered only at the remedy selection stage.[8] (*Id.* at 11). Consequently, "[e]ven if

---

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest in investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

7. Section 107(b) of CERCLA, 42 U.S.C. § 9607(b), provides as follows:
    (b) Defenses
    There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
    (1) an act of God;

    (2) an an act of war;
    (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
    (4) any combination of the foregoing paragraphs.

8. We note that while CERCLA requires the NCP to assure cost effectiveness for remedial actions it does not make a similar requirement for removal actions. In the context of the present remedial cost recovery action, however, this distinction is of no moment.

Defendants could prove their claims *in their entirety,* such proof, as a matter of law already recognized by Judge Gerry, would not establish 'inconsistency with the NCP.' " (*Id.* at 4).

The plaintiff asserts that previous courts have upheld its right to collect all costs incurred during a clean up.[9] Those courts, the plaintiff argues, did not use any threshold of reasonableness or efficiency as a prerequisite to the collection of costs but rather held that cost-effectiveness was not a valid challenge to implementation costs and that costs themselves could not be inconsistent with the NCP. (*Id.*) (*citing American Cyanamid,* 786 F.Supp. at 162 ("Once the EPA validly chooses a permanent remedy for a site, cost-effectiveness is no longer a viable challenge to the implementation of that remedy."); *Hardage,* 982 F.2d at 1443 ("The NCP regulates choices of response actions, not costs.... Costs, by themselves, cannot be inconsistent with the NCP.") (citations omitted)).

The plaintiff also points to the significant difference in the statutory language describing the standards of recovery for the government and for private parties. Under CERCLA, whereas the government can recover "all costs," a private party can recover only the "reasonable costs" (section 106(b)(2)(D)) or "necessary costs" (section 107(a)(4)(B)) of certain response activities. It is evident, as the United States argues, that Congress deliberately chose *not* to limit cost recovery by the United States to "reasonable" or "necessary costs." In addition, the "fact that all versions of the NCP make consideration of costs part of the initial decision-making process, but do not impose any limits upon the implementation of the remedy, directly reflects the Congressional intent in enacting CERCLA." (*Id.* at 14). The United States thus reasonably argues that Congress clearly "intended that the parties who benefitted from the creation of a hazardous waste site, rather than the public, should bear *all* costs incurred by the government in actions taken in response to conditions at such sites." (*Id.* at 15).

The plaintiff also explains at length that, under its interpretation of CERCLA, certain costs, although incurred in connection with the remedy, are not recoverable. For example, the plaintiff explains that fraudulent and duplicative costs [10] would not be charged to defendants because such costs are not properly attributable to the site. Since those costs never reach the stage at which the plaintiff would consider whether or not they were consistent with the NCP, they are not costs for which the plaintiff would seek recovery.

Finally, the plaintiff argues that policy reasons support a finding that inconsistency of the response action with the NCP is the only defense available in this cost recovery action. The plaintiff asserts that if "defendants were allowed to challenge the 'reasonableness' or 'propriety' of the government's costs, they would have no incentive to do the work themselves." (*Id.* at 18). In other words, the defendants had the opportunity to do the clean up themselves and, if they chose not to do so, they voluntarily took the risk that the EPA and its contractors would do it inefficiently.[11] The plaintiff admits that, due to

---

9. In fact, the plaintiff claims that there are no procedural prerequisites to its cost recovery once it has established that it incurred the cost and that the cost was related to the site. Instead, the plaintiff argues that "procedural requirements 'are intended to protect the integrity of the Superfund and not limit the government's replenishing it by recovery from responsible parties.' " (Pl. Mem. at 10) (citing *United States v. Wade,* 577 F.Supp. 1326, 1336 (E.D.Pa.1983)). More than one court has held that once the government proves that it incurred the costs for a particular site, the burden shifts to the defendants to prove that the costs arose from actions that were inconsistent with the NCP. *See, e.g., Hardage.*

10. The government interprets duplicative costs to mean duplicate billing for the same item as opposed to billing for a procedure that may have been repeated because it was necessary to do so.

11. Indeed, one needs to travel only a few miles to the nearby GEMS Landfill Superfund Site to find a striking example of the relative efficiencies of a private cleanup. At GEMS, the construction of the Phase I remedy by the trustees of the settling parties has been completed for approximately one-half the projected cost of a governmentally-administered remediation. *See generally NJDEP v. GEMS, Inc.,* 719 F.Supp. 325 (D.N.J.1989); *NJDEP v. GEMS, Inc.,* 138 F.R.D. 421 (D.N.J. 1991); *NJDEP v. GEMS, Inc.,* 800 F.Supp. 1210 (D.N.J.1992); *NJDEP v. GEMS, Inc.,* 821

the additional layers of administration, it may cost the EPA more to clean up the site than it would a private party even if the EPA operated efficiently. The plaintiff argues, however, that the defendants do not enjoy any statutory right to sit back while the EPA cleans up the site and later complain about cost. The plaintiff asserts that the statute is designed to give defendants an incentive to remediate sites themselves, not to wait for the EPA and State. This incentive helps explains why there is a different cost recovery standard for the government and for private parties.

The defendants, on the other hand, claim that Congress did not intend to enable the EPA to write a blank check.[12] (Def. Mem. at 2). They find it absurd that the EPA could collect excessive costs and believe that the EPA should be held to some standard of reasonableness.[13] Furthermore, the defendants do not believe that they should be penalized because they did not clean up the site. In addition, they do not believe that there is a distinction between the cost recovery available to the government and private parties. They state that, because CERCLA is purportedly a poorly drafted statute, this court should not place emphasis on slight distinctions in language and should not interpret language literally.[14]

The defendants claim that the plaintiff's right to recovery is limited by whether the costs are of a remedial or removal action, and that "CERCLA's definitions of 'removal' and 'remedial' actions establish a rational framework for connecting a release of hazardous substances to an appropriate response action." (*Id.* at 6). They assert that the definitions for "removal" and "remedial" incorporate a standard of necessity, reasonableness, and cost-effectiveness that must be given effect when interpreting section 107(a). (*Id.* at 6–7). The defendants argue that the definitions can not be ignored when interpreting § 107(a). They assert that by "[a]pplying the United States' reasoning, many sections of CERCLA would be rendered utterly meaningless including, for example, the statutes of limitation for § 107 cost-recovery actions imposed by § 113(g)(2)." (*Id.* at 7).

In short, the defendants claim that "[c]osts that are unnecessary to respond to a release do not come within the definition of 'removal' or 'remedial' action and therefore are not recoverable under § 107(a)(4)(A)." (*Id.*) (citing *United States v. Rohm and Haas Co.*, 2

F.Supp. 999 (D.N.J.1993); and *NJDEP v. GEMS, Inc.*, 866 F.Supp. 826 (D.N.J.1994).

**12.** The defendants argue that the government does not have unlimited authority to incur and recover response costs. The defendants, for example, cite to sections of CERCLA which limit the decision to incur costs to the President and certain delegees, § 104, and state that Superfund money can only be used for particular, enumerated purposes, § 111. (Df. Mem. at 8).

**13.** The defendants suggest that this court can use the Federal Acquisition Regulations ("FAR") as measure for determining if the plaintiff's costs were reasonable. Neither side has found any case law that requires the EPA to comply with the FAR when selecting and implementing a remedy under the NCP. In fact, the cases we found that addressed that issue did not reach that question. Because we find, as discussed *infra,* that EPA can recover response costs even if they are unreasonable, excessive, improper, duplicative, and not cost-effective, we do not need to consider the application of the FAR, so long as the costs were incurred in a removal or remedial action that is not inconsistent with the NCP.

**14.** It is ironic that the defendants contend that there is no distinction between the recovery available to the government and the recovery available to private parties. One of the cases they later rely upon, *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C.1985), explicitly finds such a distinction. In *Ward,* the court found that the difference in language ("consistent with" as opposed to "not inconsistent with") "implies that government actions taken are presumed to be consistent with the NCP unless otherwise shown, while actions of private parties are not entitled to the benefit of this presumption." *Id.* at 899. The defendants have not cited to one case which supports their argument that the language distinction is the result of poor drafting and not Congressional intent. In fact, the court in *Ward* is not alone in making this distinction. *See, e.g., Hardage,* 982 F.2d at 1442 ("This statutory language indicates that Congress intended that a different standard apply to parties other than the federal government seeking response costs ..."); *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.,* 810 F.2d 726, 747 (8th Cir. 1985) (" 'not inconsistent' is not, at least for the purposes of statutory construction and not syntax, the same as 'consistent' ") (*"NEPACCO"*).

F.3d 1265, 1275–76 (3d Cir.1993)).[15] As discussed below, the defendants' reliance on *Rohm and Haas* for this proposition is misplaced. While that court held that the government's costs from overseeing a private clean up action could not be characterized as part of a removal or remedial action, they did not use necessity to the action as a gauge. Such oversight costs are not recoverable whether or not "reasonable" or "necessary."

In addition, the defendants argue that the NCP requires the government not only to select but also to implement response actions in a cost-effective manner.[16] (*Id.* at 9). They cite to section 300.69 of the 1982 and 1985 NCPs claiming that it evinces the necessity of cost-effectiveness because that section requires the EPA to keep an accurate account of costs incurred. (*Id.* at 10). Similarly, they cite to section 400.435 of the 1990 NCP because it requires a ROD amendment or Explanation of Significant Differences when the remedial action significantly differs from the ROD in terms of scope, performance, or cost. (*Id.*). Whether accounting is accurate, however, is not indicative of whether the underlying costs are reasonable or necessary. Likewise, a requirement that the EPA explain significant cost differences is not the same as a requirement that all response actions be implemented in the most cost-effective, reasonable manner.[17]

The defendants next argue that Congress did not intend for the government to recover improper, wasteful, excessive, or unreasonable costs. (*Id.* at 11). The defendants assert that both the statutory language and the legislative history of CERCLA indicate "that Congress did not intend to give the EPA a blank check in conducting response actions." (*Id.*). The defendants put forth the testimony of Assistant Attorney General Habicht and the statements of Senator Mitchell to assert that potentially responsible parties ("PRPs") should be able to challenge improper costs in cost recovery actions and that cost-effectiveness should be applied to the implementation of the selected remedy. (*Id.*). Far from what the defendants claim, however, the passages cited do not suggest that Congress "did not intend to authorize EPA to recover unnecessary and wasteful costs." An exhortation to be cost-effective does not equate to a prohibition on the recovery of excessive costs.

Although this court does not find the CERCLA statute or Congressional intent sufficiently ambiguous to require consideration of CERCLA's legislative history, we note that the legislative history lends little support to the defendants' position. Much of the legislative history concerning cost-effectiveness, cost recovery, and judicial review discusses the issues at the response action level. For example, a Senate Report concerning the SARA amendment which addressed pre-enforcement judicial review stated that "[r]esponse actions or orders ... may be subject to judicial review at the time

---

**15.** As noted above, the plaintiff similarly claims that costs that are not associated with the removal or remedial action at the site in question cannot be recovered. As a result, fraudulent costs, which are not costs associated with the removal or remedial action at the site, are not recoverable. The plaintiff and the defendants appear to agree on this concept in general but disagree as to whether unreasonable costs can be recovered by the government in a response or remedial action.

**16.** The defendants assert that, even though the NCP does not explicitly require cost-effectiveness during implementation, the government should do so because "even wholesale delegations of authority to an agency contain the implied condition that the authority should be exercised reasonably." (Df. Mem. at 9) (citing *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970)). The defendants claim that "EPA believes that the NCP requires cost-effec-

tiveness in remedy selection *and* implementation" and cite to the preamble to the 1990 NCP: "EPA believes that cost is a relevant factor for consideration as part of the selection of the remedy from among protective, ARAR-compliant alternatives, and not merely as part of the implementation phase." (*Id.*) (quoting 55 Fed.Reg. 8726 (Mar. 8, 1990)). Literally, however, the EPA merely states that cost is a relevant factor for consideration, it is not a requirement. Moreover, the defendants have not cited to any case law that holds that inefficient implementation of a response action is a defense to cost recovery.

**17.** As noted in n. 1, above, this opinion does not address a substantial issue that remains for future briefing and resolution, namely, whether EPA was required to issue an Explanation of Significant Differences in connection with the implementation or change of the remedy, pursuant to 40 C.F.R. § 300.435(c)(2) (1990).

the government seeks cost recovery.... The new procedures [which do not provide pre-enforcement judicial review] set forth in this amendment are designed simply to increase the incentive for potentially responsible parties to undertake response actions." S.Rep. No. 11, 99th Cong., 1st Sess. 58–59 (1985). The subject of the judicial review is the action, not the individual costs.

The defendants additionally contend that case law supports a close scrutiny of EPA's costs. (Df. Mem. at 12). Relying on *Lone Pine Steering Comm. v. U.S. EPA*, 777 F.2d 882, 887 (3d Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), the defendants argue that courts should undoubtedly look carefully at the claims made by the government when suit for reimbursement is brought under § 9607, necessitating a careful and exacting study by the court. (*Id.*).

The defendants' reliance on *Lone Pine* is misplaced, however, for two reasons. First, the sections that the defendants quoted are mere dicta because the question that the Third Circuit decided was whether a court has jurisdiction for pre-enforcement review of an EPA emergency or remedial action. Since that court determined that such jurisdiction does not exist, 777 F.2d at 887, any further comment was dicta. Second, that court's comments concerned a "careful look" at the remedy selection, not at the past costs of measures undertaken to implement the selected remedy.

In *Lone Pine*, the defendants argued that the EPA's "project was unnecessarily extensive" and therefore too expensive. *Id.* at 883. The EPA wanted to place a clay cap over the landfill, construct a slurry wall around the site, and pump and treat the ground water. The Lone Pine Steering Committee contended that only the clay cap was necessary. Their argument with the EPA, therefore, concerned remedy selection: "the Committee allege[d] that the EPA's remedy selection was too costly, the agency

failed to evaluate adequately the Committee's proposal ... resulting in duplicative and unnecessary measures." *Id.* at 884. The court held that the defendants could raise all of their legitimate objections during the cost recovery action and that "if some of the measures which the EPA proposed were not cost effective, recovery for those items would be denied." *Id.* at 885. The court cleared up any confusion regarding the term "measures" when it noted that, on appeal, the defendants argued that they would be prejudiced "because it will be impossible at that time [during the cost recovery actions] to show that the response *action* was excessive." *Id.* (emphasis added). The court further held that the cost recovery action would "provide an adequate opportunity for the alleged responsible parties to object to the cost and adequacy of *response actions.*" *Id.* at 887 (emphasis added). While the court held that the "statute requires EPA to observe cost effectiveness," *id.*, it is clear, in the context of the opinion, that the court meant cost-effectiveness to apply to remedy selection, not to individual costs.

The defendants also rely on *Rohm and Haas*, to argue that the government cannot recover all of its costs. The defendants assert that the court in *Rohm and Haas* "distinguished between those costs which were truly for removal and remediation and thus potentially recoverable and those costs which should not be classified as for removal or remedial action and which were non-recoverable." [18] (Df. Mem. at 13). *Rohm and Haas*, however, does not further defendants' arguments. As noted above, the issue before that court was whether governmental supervision of a private party's cleanup action pursuant to a RCRA consent order could be construed as a removal or remedial action and whether overhead costs arising from the supervision would become recoverable under section 107. That court noted that "if a particular action qualifies as a 'removal action' under the definition contained in

18. Again, this court notes that the plaintiff does not claim to be able to recover costs that are not attributable to a removal or remedial action. The plaintiff asserts that it can recover all costs of a removal or remedial action. The defendants' distinction between all costs and costs

characterized as remedial or removal, therefore, is only useful to the extent the defendants argue that excessive, unreasonable, improper, and non-cost effective costs, by definition cannot be remedial or removal costs.

CERCLA, the government's costs are recoverable under the unambiguous language of § 107, regardless of what statutory authority was invoked by EPA in connection with its action." *Rohm and Haas*, 2 F.3d at 1274–75.

Although the court in *Rohm and Haas* questioned whether supervision or oversight could be characterized as a removal or remedial action, it held that, once such a characterization was made, the "unambiguous language" of the statute made the costs recoverable. When determining whether or not the oversight activities constituted a removal or remedial action and therefore whether the costs arising from the activities were recoverable, that court did not consider the reasonableness or cost-effectiveness of the expenses. Moreover, the court in *Rohm and Haas* did not imply that reasonableness or cost-effectiveness should be an issue at all when considering whether a cost can be attributed to a removal or remedial action.

The defendants also claim that the Third Circuit allows defendants in a cost recovery action to challenge costs which are "unnecessarily expensive." (Df. Mem. at 13) (citing *United States v. Princeton Gamma–Tech, Inc.*, 31 F.3d 138, 142 (3d Cir.1994)). The defendants assert that the Fifth[19] and Sixth[20] Circuits follow similar reasoning. (*Id.* at 14). The defendants, however, are

mistaken. In *Princeton*, the defendants sought injunctive relief because they believed "that the EPA's selected remedy will exacerbate the existing environmental damage and cause further irreparable harm to the environment." 31 F.3d at 141. The issue before the court concerned whether or not it had subject matter jurisdiction to order injunctive relief. Again, that makes any comments regarding expenses dicta. Moreover, the court held that the EPA's cost recovery suit "opens the door for alleged responsible parties to contest their liability as well as to challenge EPA's response *action* as being unnecessarily expensive or otherwise not in accordance with applicable law." *Id.* at 142 (emphasis added). The challenges permitted concerned the EPA's action, not individual costs. The court in *Princeton* described "the suit for reimbursement of response costs as the opportunity for challenging the EPA's remedial or removal decisions." *Id.*

The court in *Princeton* also noted that legislative history supports the "judicial review of the selection of a response action." *Id.* at 143 (quoting H.R.Rep. No. 99–253(III), 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.C.C.A.N. 3038, 3045). Finally, the court in *Princeton* stated that potentially responsible parties could "contest payment of ex-

**19.** The defendants cite to *In re Bell Petroleum Services*, 3 F.3d 889, 907 (5th Cir.1993), but quote a passage of dicta that expressed concern over the possibility that EPA might have "unrestrained spending discretion." The court, however, did not adopt that passage because it did not have to address the issue of unreasonable costs arising from a response action that was consistent with the NCP. In fact, the court explicitly stated that it would "express no opinion on whether § 107(a)(4)(A) permits the EPA to recover unreasonable, unnecessary, or excessive costs." 3 F.3d at 907, n. 26. Moreover, the court adopted the reasoning of *Hardage, i.e.*, that to allege inconsistency with the NCP the defendant must show that the EPA acted arbitrarily and capriciously in choosing the response action.

**20.** The defendants here rely on *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289 (6th Cir. 1991), to argue that "the NCP requires remedial action measures to be cost effective." (Df. Mem. at 14). This case, however, does not further the defendants' arguments that the NCP requires cost-effective implementation or that individual costs may be challenged. Both the plaintiff and the court in *Barmet* agree that the EPA must consider cost-effectiveness when se-

lecting a remedy but neither suggest that the EPA must meet a cost effectiveness threshold before it can recover costs. As the defendants note, the court stated that the "argument that EPA's removal and remedial actions will be conducted without regard to cost is controverted by both CERCLA's language and the policy supporting its accompanying regulations." 927 F.2d at 294. That sentence, however, concluded a paragraph concerning cost-effectiveness in remedy selection. Barmet argued that it could not contest the EPA's expenditures meaningfully because judicial review was limited to the administrative record. That court held that Barmet could supplement the record and that "the only documents specifically excluded from the administrative record include those documents that 'do not form a basis for the selection of the response action.'" 927 F.2d at 295 (quoting 55 Fed.Reg. 8,860 (1990) (codified at 40 C.F.R. § 300.10)). The clear implication is that the court would review EPA's selection of the remedy, not individual costs, for consistency with the NCP's requirement for cost-effectiveness in remedy selection.

penses resulting from a remedial action that is inconsistent with the National Contingency Plan.... Potentially responsible parties may defend cost-recovery actions on the ground that the EPA's decision in the selection of the remedy was 'arbitrary and capricious.'" *Id.* at 143–44 (quoting 42 U.S.C. § 9613(j)(2)). The court held that for the defendant to succeed it had "the burden to show that EPA's choice of remedy was indeed arbitrary and capricious or otherwise contrary to law." *Id.* at 149. The court never implied that defendants could challenge cost recovery based upon arguments that individual costs were "unnecessarily expensive." In short, judicial review of costs would focus upon remedy selection and modification, and not implementation of the duly selected remedy.

In addition, the defendants assert that "it was taken for granted that individual costs could be challenged as inconsistent with the NCP, and that uncertainty only existed as to whether defendants could challenge remedy selection." (Df. Mem. at 15) (citing *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C. 1985)). The defendants claim that in *Ward* the issue was "whether they [the *Ward* defendants] may challenge the method of clean up chosen by the government or whether they are limited to challenging the reasonableness of the costs incurred pursuant to the chosen method." 618 F.Supp. at 900. They further claim that the court in *Ward* held that "defendants may challenge the remedial method used by the plaintiffs, as well as costs in implementing and executing the plan." (Df. Mem. at 15) (quoting *Ward,* 618 F.Supp. at 901).

Putting aside the fact that a decision from the Eastern District of North Carolina would not bind this court, the defendants' reliance on this case is misplaced. The defendants in *Ward* requested a pretrial ruling concerning the limits the court would place on their challenge of the plaintiff's choice of response alternatives. 618 F.Supp. at 899. The excerpt cited as being the issue in *Ward* was merely that court summarizing one of the defendants' requests. That court also explained the defendants' request as asking whether "they may challenge the cleanup method used by the EPA on the basis that it was not cost-effective." *Id.* at 900.

Far from presuming individual costs could be challenged, the court in *Ward* held that "it would be a waste of judicial time and government resources[,] not to mention an usurpation of agency authority, to require the EPA to justify its every action in order to recover under section 107." *Id.* When considering cost-effectiveness the court held only that "defendants must be allowed the opportunity to attack the government's choice of methods." *Id.* In addition, the court held that "CERCLA only requires that the cleanup costs be 'not inconsistent' with the NCP." *Id.* While the defendants may have assumed that they could challenge individual costs, clearly the court did not make any such assumption or implication.[21]

■ The defendants seek to distinguish *Hardage,* a case that held that only response actions, not individual costs, could be inconsistent with the NCP, by arguing that defendants in that case lost because they did not take sufficient discovery and because their reliance on affidavits from experts was insufficient to create an issue of fact to survive summary judgment. (Df. Mem. at 16). The defendants seemed to find solace in the fact that, while the court in *Hardage* found that costs are presumed reasonable once the government proves that they were incurred, it did not state that the presumption was irrebuttable.[22] (*Id.*). The defendants interpret

---

21. While the court in *Ward* did state that "[i]n this light, defendants may challenge the remedial method used by plaintiffs, as well as costs in implementing and executing the plan," it did not imply that the defendants could challenge the reasonableness of individual costs outside of their challenge to the underlying removal or remedial action. The court, by "[i]n this light," meant within the framework of defendants' "burden of proving inconsistency with the NCP." 618 F.Supp. at 901. The court would allow defendants to challenge "costs in implementing and executing the plan" if the plan itself was inconsistent with the NCP. As a prerequisite, "[h]owever, defendants must show that the EPA's action was arbitrary and capricious ... before the court will find such a decision to be inconsistent with the NCP." *Id.*

22. We note that other courts have held that the government's costs are conclusively presumed

862

this to mean that a party can dispute individual costs in a cost recovery action. (*Id.* at 17). The defendants' interpretation is incorrect. The court in *Hardage* clearly stated:

When the government is seeking response costs, however, consistency with the NCP is presumed unless defendant can overcome this presumption by presenting evidence of inconsistency.... In order to show that a government response cost is inconsistent with the NCP, a defendant must demonstrate that the government's response action giving rise to the particular cost is inconsistent with the NCP. To show that a government response action is inconsistent with the NCP, a defendant must demonstrate that the EPA acted arbitrarily and capriciously in choosing a particular response action to respond to a hazardous waste site.

982 F.2d at 1442 (citations omitted). The defendants can only challenge costs once they establish that the action giving rise to those costs was inconsistent with the NCP.[23]

■ The defendants also appear to argue that because the government often does not recover 100 cents on every dollar it does not have the right to collect 100 cents on the dollar in this case. (Df. Mem. at 17). The defendants point not only to the government's history of settling many cases after discovery but also to the *American Cyanamid* case wherein the government decreased the amount of costs for which it sought recovery and the magistrate denied recovery of other costs. (*Id.*). The fact that the government may settle some cases or reduce some claims before trial, however, could indicate many things, not the least of which is that the compromise may eliminate risks to the government in other aspects of the recovery

action. Any pattern of settling after discovery for less than the full amount of costs incurred does not indicate that the government is not entitled to the full recovery of costs. Moreover, the fact that the government could not recover all of its costs in one case does not demonstrate that the government is not entitled to recover all costs incurred from removal and remedial actions associated with a specific site, so long as the removal or remedial action is not inconsistent with the NCP.

**B. Analysis**

■ When determining, as a matter of law, whether or not arguments that costs are unreasonable, duplicative, improper, excessive, and not cost-effective provide defenses in a cost recovery action, this court must consider the statutory language itself, the relevant sections in the context of the entire statute, and court interpretations of these sections. We are mindful of the Supreme Court's general assumption "that Congress expresses its purposes through the ordinary meaning of the words it uses ... '[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.'" *Escondido Mut. Water Co. v. La Jolla Indians*, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (quoting *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983)).

The plain language of section 107(a) clearly indicates that "notwithstanding any other provision or rule of law," the government may recover "all costs of removal and remedial action ... not inconsistent with the national contingency plan." Due to the "notwithstanding" preface, this court does not

reasonable. *See, e.g., NEPACCO*, 810 F.2d at 748 ("'all costs' incurred by the government that are not inconsistent with the NCP are conclusively presumed to be reasonable"). Under such a presumption, the defendants only avoid costs by proving that the action that gave rise to the costs was inconsistent with the NCP, or that the cost item was not related to the removal or remedial action that was implemented.

23. The fact that the defendants in *Hardage* did not supply sufficient affidavits from their experts does not change this holding. Moreover, when addressing the defendants' argument that exces-

siveness or unreasonableness demonstrated inconsistency with the NCP, the court explicitly held that CERCLA "does not limit the government's recovery to 'reasonable costs,' rather it permits the government to recover 'all costs ... not inconsistent with the [NCP].'" 982 F.2d at 1443. The court found that "a challenge that an individual cost is excessive or unreasonable does not demonstrate inconsistency.... [R]esponse action inconsistency with the NCP is the sole defense to liability for the government's costs." *Id.* at 1443–44.

need to consider any conflicting statutes or sections within CERCLA. Within this section, there is no limitation upon the cost recovery other than the costs having to arise from removal or remedial actions that are not inconsistent with the NCP. No factor of reasonableness or necessity of individual remedial costs is explicitly or implicitly required.

Similarly, Congress was careful to enumerate the defenses to the recoverability of all response costs, listing the exclusive defenses in section 107(b). Had Congress wished to limit recovery to reasonable, necessary, cost-effective items, it could easily have done so in section 107(b). It did not.

■ Moreover, Congress's use of the words "necessary" and "reasonable" in section 107(a)(4)(B), concerning cost recovery by private parties, and section 107(a)(4)(C), concerning damages for injury to, destruction of, and loss of natural resources, implies that Congress did consider when to make cost recovery contingent upon the necessity or reasonableness of costs. The absence of either word in the section addressing the government's right to cost recovery clearly indicates that Congress did not intend for the EPA to be so limited. We find that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in' the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

Congress drew the same careful distinction elsewhere in the statute, permitting the Hazardous Substance Superfund to be used for "[p]ayment of governmental response costs incurred pursuant to section 9604 of this title," 42 U.S.C. § 9611(a)(1), while limiting Superfund reimbursement in the private party context to "[p]ayment of any claim for *necessary* response costs incurred by any other person as a result of carrying out the [NCP]." 42 U.S.C. § 9611(a)(2). Superfund thus can pay all governmental response costs, but only necessary response costs of private parties. Similarly, unlike governmental response costs which are paid in full out of the Superfund, any "administrative costs or expenses" can not be paid out of the Superfund "unless such [administrative] costs and expenses are reasonably necessary for and incidental to the implementation of [CERCLA]." 42 U.S.C. § 9611(a). Again, in limiting administrative costs and expenses to those "reasonably necessary," Congress placed a limitation of reasonableness upon recoverability which it did not choose to place on the government's actual response costs.

The defendants' argument that the definitions of "removal" [24] and "remedial" [25] imply

24. 42 U.S.C. § 9601(23) defines removal as follows:

The terms "remove" or "removal" means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and

Emergency Assistance Act [42 U.S.C. § 5121 et seq.].

25. 42 U.S.C. § 9601(24) defines remedial action as follows:

The terms "remedy" or "remedial action" means [sic] those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternate

a limit to cost recovery based upon the reasonableness of costs is meritless. The definitions of "removal" and "remedial" do not impose a requirement of reasonableness of costs incurred. In fact, the word "reasonable" does not appear in either definition. There certainly is no requirement in the definitions that removal and remedial costs be efficient or reasonable.

Similarly, the definitions do not require or imply that all removal and remedial costs must be necessary. The word "necessary" only appears in the definition for remedial action once and then it is in reference solely to the permanent relocation of residents. Likewise, the definition of removal does not embody necessity thresholds for costs. The fact that the phrase "actions as may be necessary" appears several times later in the definition does not superimpose necessity requirements upon items of individual costs. That phrase was used in the context of actions addressing the monitoring and assessing of the release or the threat of release of hazardous substances; the disposal of removed material; and the prevention or mitigation of damages. Arguably such removal *actions*, as opposed to the actual cleanup or removal of hazardous substances, must be shown to be necessary. That does not mean, however, that the costs which arise must be reasonable, cost-effective, proper, non-excessive, and necessary to the achievement of the necessary removal action.

Analyzing this interpretation of section 107 within the context of the CERCLA statute creates no tension within the statute and, therefore, gives this court no reason to alter its finding that the defendants' cost arguments are not valid defenses in a cost recovery action. In fact, such an interpretation complements the remedial nature of CERCLA as well as the policy that those who created the hazardous site should pay the full cleanup costs. PRPs have the opportunity to clean up the site on their own under an approved remediation plan pursuant to sections 104(a) and 122 of CERCLA, 42 U.S.C. §§ 9604(a) and 122, and to sue for contribution from non-participating responsible persons pursuant to section 113(f) of CERCLA, 42 U.S.C. § 113(f). If they decide not to do so they cannot later complain that the individual costs of the EPA's response actions were not the most reasonable or cost-effective.[26] Where responsible persons have taken no action to remediate the hazardous waste releases for which they are liable, the statute does not permit second-guessing of the reasonableness and efficiency of costs incurred when the government had to take those steps.[27]

The EPA did not create the hazardous waste site, it is not at fault. Therefore, Congress has determined that the government should not have to bear the risk of inefficient or unreasonable costs when performing the often difficult and complex tasks of remediation and that risk should be borne by those at fault, *i.e.*, the responsible persons as defined under CERCLA § 107(a). Moreover, the EPA already has many procedures in place to help guarantee cost-effectiveness. When private parties engage in clean up activities, on the other hand, there are no procedures which help guarantee cost-effectiveness. Congress has assigned a greater level of risk to private parties, whose cost

water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition off site of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

26. There are, to be sure, substantial factors that can frustrate or at least complicate good faith efforts to achieve early voluntary remedial resolutions, some of which are practical problems of party identity and uncertainty, and some of which are more fundamental to the CERCLA statutory scheme that have thus far eluded efforts for reform. *See* Comment, *Superfund Settlements: The Failed Promise of the 1986 Amendments*, 74 Va. L.Rev. 123–157 (1988).

27. Nothing herein implies that any party to this action is a responsible person under CERCLA since liability determinations remain to be made in this case.

recovery is limited to "necessary" costs of response when the private party seeks cost recovery under CERCLA § 107(a)(4)(B). Being at fault themselves, private parties have no right to expect other PRPs to pay for their inefficiency. Consequently, a reasonableness limitation on cost recovery for private parties but not the government makes sense, and that is the line Congress has reasonably drawn.

Likewise, Congress has not given the EPA a license to squander the funding from the Superfund that it must use for such remedial actions. By requiring that the actions be selected in a manner consistent with the NCP, the statute embraces the requirement that the EPA consider the cost-effectiveness of various alternative remedial plans before selecting the approach to be taken at the site. We agree with the Tenth Circuit's observation in *Hardage*, 982 F.2d at 1443, that CERCLA mandates that the NCP assure consideration of cost-effectiveness for remedial actions. The NCP requires the government to consider cost when selecting remedial alternatives, 40 C.F.R. § 300.68(g)(1) (1989), and to select a cost-effective remedial alternative, *id.* § 300.68(8). *Hardage*, 982 F.2d at 1443. Judicial review of the remedy selection, including cost-effectiveness, is available. The limitation on recovery of response costs "incurred" by the government similarly implies that costs unrelated to the duly selected remedy are unrecoverable, and also that costs that are projected or probable are not recoverable until they have been paid by the government, again implying the regularity and due care of governmental accounting and disbursement measures as a safeguard.

In addition, Congress frequently has been reminded of the harshness of CERCLA in hearings on proposed CERCLA amendments too numerous for citation, but has chosen not to alter the cost recovery provisions even though it has amended other sections. CERCLA is designed to give PRPs an incentive to clean up a site themselves and not to force Superfund expenditures to do so. Not

allowing defendants to challenge the reasonableness of individual costs fits with this design and promotes more complete reimbursement to the Superfund. Were responsible persons able to make such challenges they would have no incentive to assess and remediate sites themselves, would delay cost-recovery proceedings even more than they are delayed currently, and would force taxpayers to bear the risk that the EPA might incur unreasonable costs to remediate such environmental problems. The fact that Congress has not amended CERCLA's cost recovery provisions when it has had both the knowledge and the opportunity to do so throughout the past decade further indicates Congress's preference that PRPs, not taxpayers, bear the risk that the EPA's response actions may be more expensive than those of a private party. We see no reason to deviate from this Congressional preference.

Moreover, this court takes guidance from section 113 of CERCLA, 42 U.S.C. § 9613, which governs civil proceedings related to CERCLA and SARA. Section 113(h), concerning the timing of judicial review, states in relevant part that "[n]o federal court shall have jurisdiction ... to review any challenges to [a] removal or remedial action selected under section 9604 of this title ... except in one of the following: (1) An action under section 9607 of this title to recover response costs or damages or for contribution." This section allows review, in a cost recovery suit, of the action selected by the EPA but does not explicitly or implicitly authorize review of individual costs, other than to determine whether the items arise from a response action that is not inconsistent with the NCP.

Finally, although there is no binding Third Circuit case law besides the earlier opinion in this case, other courts have held consistently that arguments concerning the unreasonable, unnecessary, improper, non-cost-effective, and excessive nature of particular response costs do not provide a defense to cost recovery.[28] Defendants have not presented any

---

**28.** Other than the earlier opinion in *Kramer*, the closest case to address the issue of unreasonableness of response costs was *Princeton*. As noted above, that court held that the defendants could "challenge EPA's response action as being un-

cases in which a court found that individual costs could be challenged independent from a claim that the removal or remedial action from which they arose was inconsistent with the NCP. Moreover, the plaintiff has presented several persuasive cases in which the courts held that individual costs could not be so challenged.

We are persuaded by the reasoning of cases such as *American Cyanamid* and *Hardage* in which courts have not allowed challenges to individual costs based on excessiveness, non-cost-effectiveness, and unreasonableness. In *American Cyanamid,* the defendants argued that "the response costs are not 'cost-effective' and are therefore inconsistent with the NCP." 786 F.Supp. at 162. The court found this argument inapposite. *Id.* In addition, the defendants specifically challenged costs based on the "cost of the action, not the action itself. The generator defendants appear[ed] to challenge all of the allowed costs as inconsistent with the NCP. They claim[ed] that the work done at the site failed to comply with the technical and 'cost-effective' requirements of the NCP." *Id.* The court, however, held that "cost-effectiveness is not a proper challenge to a charge under the NCP." *Id.* In fact, the court held that "CERCLA imposes no obligation on the United States to minimize its response costs for the benefit of responsible parties who are liable for the costs." *Id.* The court explained that "[r]easonableness of costs for clean-up is not a defense to recovery. The requirement of NCP consistency 'addresses the nature of the response action for which costs can be recovered,' not how much the response action costs." *Id.* at 161–62 (quoting *United States v. Shell Oil Co.,* 605 F.Supp. 1064, 1074 (D.Colo.1985)).

The court further held, and we agree, that "[c]ost effectiveness is a criteria for the EPA only when choosing a permanent remedy for a site among competing alternatives. This is the *only* reference to cost-effectiveness of hazardous substance response actions in the NCP. 40 C.F.R. § 300.68(j) (1983); 40 C.F.R. § 300.68(i) (1985); 40 C.F.R. § 300.430(f)(1)(ii)(d) (1990)." *Id.* at 162 (emphasis in original). Moreover, the court held necessarily expensive" but did not make such a

that "[e]ven if a response action is shown to be inconsistent with the NCP, defendants still have not triumphed. In order to establish the amount of costs to be disallowed, 'the defendants have the burden of demonstrating that the clean-up, because of some variance from the Plan, resulted in demonstrable excess costs.'" *Id.* at 161 (quoting *O'Neil v. Picillo,* 682 F.Supp. 706, 729 (D.R.I.1988), *aff'd,* 883 F.2d 176 (1st Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990)).

Similarly, the court in *Hardage* held that the defendants could not challenge individual costs. The defendants in that case argued that "response costs were excessive and unreasonable and therefore unrecoverable." 982 F.2d at 1440. The court, however, held, and we agree, that "[i]f the government response actions are in harmony with the NCP, the costs incurred pursuant to those actions are recoverable from liable parties," *Id.* at 1441. The defendants must show inconsistency with the NCP to avoid paying response costs. But, "[i]n order to show that a government response cost is inconsistent with the NCP, a defendant must demonstrate that the government's response action giving rise to the particular cost is inconsistent with the NCP." *Id.* at 1442.

We agree with *Hardage* that the NCP regulates response actions and, consequently, only actions can be inconsistent with the NCP. *Id.* at 1443. The defendants in that case argued that if the NCP did not require individual costs to be reasonable then the EPA had failed its statutory mandate to develop a plan that insured that remedial actions would be cost-effective over the period of potential exposure. *Id.* That court responded that the "NCP does assure that remedial action measures are cost-effective by requiring the government to consider cost when selecting remedial alternatives, 40 C.F.R. § 300.68(g)(1) (1989), and by requiring [pursuant to § 300.68(i) ] the government to select 'a cost effective remedial alternative.'" *Id.* That court held that "a challenge that an individual cost is excessive or unreasonable does not demonstrate inconsistency for individual costs. 31 F.3d at 142.

tency with either of these NCP provisions."
*Id.*

■■■ This court finds that the only cost-related defense available to the defendants is that the remedy selected and performed is inconsistent with the NCP. Moreover, we find that under the NCP any requirements concerning cost-effectiveness in the selection of the remedy do not apply to individual costs. Individual costs cannot be inconsistent with the NCP unless they arise from an action that is inconsistent with the NCP. We hold that while the NCP requires the EPA to evaluate the cost-effectiveness of competing remedies, the NCP does not require that items of response cost be "reasonable," "proper," or "cost-effective." Costs that arise from fraud, double-billing or activities that do not relate to the lawful remedy, however, are not recoverable under section 107. The government may recover, under section 107, *all* costs of the remedy provided that the government demonstrates that it incurred the particular costs in connection with the particular site and the defendants do not establish that the remedial action that gives rise to the individual costs is inconsistent with the NCP. As the party claiming the benefit of an exception to cost recovery, the defendants carry the burden of proving that the actions that gave rise to the costs were inconsistent with the NCP.[29] This court expresses no view as to whether the particular remedies implemented in this case are consistent with the NCP.

For the reasons discussed herein, we find that arguments that individual response costs are unreasonable, excessive, duplicative, improper, and not cost-effective, as a matter of law, do not allege inconsistency with the NCP and do not provide any defense in a cost recovery action. This court will grant the second part of the plaintiff's motion.

The accompanying Order is entered.

### ORDER

This matter having come before the court upon the motion by the plaintiff United States of America for an Order declaring:

.(1) That it is the law of this case that defendants' arguments that costs are excessive, unreasonable, duplicative, not cost-effective, and improper do not allege inconsistency with the National Contingency Plan ("NCP"), do not provide a defense to a cost recovery action under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.,* and have been stricken as defenses in this case; and

(2) That, as a matter of law, those same arguments do not allege inconsistency with the NCP and therefore do not provide defenses in a cost recovery action under Section 107(a) of CERCLA; and

Having considered all submissions and oral arguments of counsel; and

For the reasons stated in the Opinion of today's date;

IT IS this 31st day of October, 1995 hereby

ORDERED that the plaintiff's motions be, and hereby are, GRANTED, without prejudice to the defendants' right to demonstrate that the remedial actions were selected or amended in a manner inconsistent with the NCP, including inconsistency with the NCP's requirement that the EPA consider the cost-effectiveness of alternative remedies before selecting a remedy, and without prejudice to the defendants' right to assert that the EPA was required to issue an Explanation of Significant Differences in connection with the implementation or change of the remedy arising from a significantly different scope, performance, or cost.

---

**29.** For the general proposition that a party seeking to benefit from an exception carries the burden of proving the exception applies, *see United*

*States v. First City National Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967).